IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **CWI CHEROKEE LF LLC,** ) | Case No. 23-52262-SMS |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

**UMB BANK'S PRELIMINARY OBJECTION TO THE DEBTOR'S
CASH COLLATERAL MOTION AND RESERVATION OF RIGHTS**

UMB Bank, N.A., not in its individual capacity, but solely in its capacity as successor trustee (the "**Bond Trustee**") under the Trust Indenture dated June 23, 2020, (the "**Indenture**") by and between Solid Waste Disposal Authority of the Cities of Muscle Shoals, Sheffield, and Tuscumbia, Alabama (the "**Authority**") and Regions Bank, as original trustee (the "**Prior Trustee**"), files this preliminary objection to the *Debtor's Motion to Authorize Interim and Final Use of Cash Collateral and Request for Expedited Preliminary Hearing* [ECF No. 20] (the "**Cash Collateral Motion**") and reservation of rights. In support of this preliminary objection, the Bond Trustee states as follows[1]:

**I.
PRELIMINARY STATEMENT**

The Debtor's Cash Collateral Motion on its face fails to justify the relief sought. The Debtor provides no basis to dispute that the assets it seeks to use are the Bond Trustee's cash collateral, no factual bases to use such cash collateral, and fails to offer *any* adequate protection to the Bond Trustee as mandated by the Bankruptcy Code. The Debtor submits no evidence, let alone

---

[1] Prior to filing this preliminary objection, counsel to the Bond Trustee spoke with Debtor's counsel seeking to obtain additional information regarding the Proposed Budget, interim payments and the relief sought in the Cash Collateral Motion. The Bond Trustee remains hopeful that the Debtor will provide sufficient information to enable a consensual resolution.

1

in admissible form, to support the emergency relief requested. In fact, the Debtor asks this Court to approve a budget (the "**Proposed Budget**") with line items for capital expenditures that are the subject of an entirely separate motion under section 364 of the Bankruptcy Code,[2] all but conceding that it is inappropriate to consider such capital expenditures as part of any emergency relief under this Cash Collateral Motion. The Debtor further proposes to use the Bond Trustee's cash collateral for an indefinite period (the Proposed Budget suggests at least 5 months) without limitation, oversight, or restriction, based on the apparent assumption that it will shortly resume operations. Even in the best of circumstances (which clearly do not exist here), the Bond Trustee cannot be expected to consent to such relief and the Court should not grant it.

More broadly, there are fundamental problems with the Debtor's total lack of disclosure in the two-plus weeks since filing for bankruptcy protection on March 7. The Proposed Budget is at odds with the undisputed facts that the Debtor's landfill operation is non-operational and the Authority is conducting remediation efforts at its own expense. Substantively, there is no basis under the Bankruptcy Code for the court to authorize use of the Bond Trustee's cash collateral absent consent or adequate protection – a concept which the Debtor fails to acknowledge, much less offer, in the Cash Collateral Motion. The Debtor disregards both the Bankruptcy Code and Fed. R. Bankr. P. 4001(b)(2), which, among other requirements, allows authorization of cash collateral at a preliminary hearing only "as is necessary to avoid immediate and irreparable harm to the estate."

To be clear, the Bond Trustee – the Debtor's largest secured creditor – has no interest in causing irreparable harm to the Debtor's bankruptcy estate. Quite the opposite. The Bond Trustee

---

[2] For example, the Proposed Budget includes spending $159,000 upfront, and another $15,394 per month, for an unnecessary on-site mobile leachate treatment system that is the subject of the Debtors' *Motion to Use Property Other than in the Ordinary Courts of Business and to Incur Post Petition Debt* [ECF No. 21] (the "**Equipment Financing Motion**").

2

would be amenable to consenting to the use of cash collateral for an interim two-week period solely to make payments necessary to stabilize operations and prevent potential irreparable harm, subject to an agreed budget and sufficient adequate protection, including replacement liens, superpriority claims and necessary reporting requirements. Any such interim consent would also be conditioned on the Debtor's commitment to provide much needed clarity about the current status of its operations and ability to operate the landfill, a serious proposal grounded in reality for the stabilization of its landfill operations, and customary forms of adequate protection to which the Bond Trustee is entitled. The parties can use the interim period to obtain information about the Debtor's timeline and plan for this case, diligence the Proposed Budget, and negotiate a consensual cash collateral order that includes the necessary and required adequate protection.

Before the Debtor can access cash collateral, the Debtor must provide the Court and the Bond Trustee adequate responses to these fundamental questions and open issues.

*Projected Revenue*. The source of all revenues contemplated in the Proposed Budget is uncertain, because the Debtor is the subject of a February 27, 2023, cease-and-desist order by the Alabama Department of Environmental Management, which required the Authority and the Debtor to cease and desist from receiving additional waste at its landfill.[3] It is also unclear whether the Proposed Budget's "Beginning Cash" amount of $82,625 is accurate because the Debtor has not yet filed any schedules or its statement of financial affairs.[4]

*Budget Details and Timeline*. The Debtor proposes to pay employees, insurance premiums, and monthly disposal fees. The Debtor must provide evidence to support how many employees the Debtor employs (including which employees have been affected by the cease-and-desist order),

---

[3] The Authority's *Motion to Transfer Venue of Case to the Northern District of Alabama* [ECF No. 22] ("**Venue Motion**") at 7.

[4] There also appears to be conflicting information about the balance of the Debtor's DIP account.

3

the nature of the insurance policies and payment terms, and the contractual obligations underlying the payment of the disposal fees. The Debtor must provide evidentiary support for the of the other line items in the Proposed Budget, including a breakdown of how the lease expense, which the Proposed Budget lists as $0 in March and $11,000 for the remaining months, is calculated. The Debtor must also show how it proposes to use time and funds to stabilize operations, render the landfill compliant with applicable regulations, and exit chapter 11.

*Funding Capital Expenditures Alongside Authority Mandate*. The Debtor seeks to spend more than $300,000 of cash collateral on capital expenditures for on-site leachate treatment equipment when, according to the Authority, third party Mid-South Septic has been hauling leachate from the landfill since March 14, at the Authority's direction and expense. Addressing this plan through an emergency cash collateral motion is premature and inappropriate given the lack of supporting evidence and information.

The Bond Trustee recognizes there are additional issues and concerns that will need to be addressed over the next several weeks and will endeavor to work with the Debtor and the Authority to achieve consensual resolutions when possible. As of the date hereof, however, the Debtor has not shown it is entitled to the relief sought, absent the Bond Trustee's consent.

## II.
## BACKGROUND

On June 23, 2020, the Authority issued $14,100,000 in Series 2020-A Solid Waste Disposal Revenue Bonds and $4,530,000 in Series 2020-B Taxable Solid Waste Disposal Revenue Bonds (collectively, the "**Bonds**"), under the Indenture between the Authority and the Prior Trustee.[5] Proceeds of the bonds were used to acquire and construct a solid waste disposal facility that was

---

[5] Copies of relevant documents are not included herein but can be made available upon request.

4

operated by the Debtor pursuant to a Lease Agreement, dated June 23, 2020, between the Authority and the Debtor (the "**Lease**"). Among other things, the Lease requires payments by the Debtor that will be sufficient to pay debt service on the Bonds when due. The Debtor also entered into a Guaranty Agreement with the Prior Trustee whereby the Debtor absolutely and unconditionally guaranteed the full and prompt payment of debt service to the Prior Trustee.

As of the petition date, at least $18,340,000 million in principal amount of Bonds remains outstanding and unpaid, not including accrued and accruing interest, fees, and the other obligations of the Debtor under the Indenture.

The Debtor's obligations with respect to the Bonds are secured by a pledge of revenues. Specifically, the Debtor and the Prior Trustee entered into a Collateral Assignment of Contracts, Permits Licenses and Plans pursuant to which the Debtor collaterally assigned to the Prior Trustee, and granted a continuing first-priority security interest in all rights of the Debtor in, among other things, all proceeds of all contracts between the Debtor and its customers; each of the waste disposal agreements, assigned to the Debtor by the Authority, between the Authority and each of its members – the City of Muscle Shoals, Alabama, the City of Sheffield, Alabama, the City of Tuscambia, Alabama – as well as Colbert County, Alabama; and the lease agreement from CWI Huntsville LF LLC to the Debtor (the "**Huntsville Lease**") as well as all gross revenues derived by the Debtor from the Huntsville Lease.

The Debtor and the Prior Trustee also entered into a Security Agreement pursuant to which the Debtor granted to the Prior Trustee a security interest in, among other things, all cash and all contract rights or rights to the payment of money, and all proceeds and products thereof. In addition, the Authority and the Debtor, as mortgagors, entered into a Mortgage, Assignment of Rents and Leases, and Security Agreement with the Prior Trustee, pursuant to which the Authority

5

and the Debtor mortgaged to the Prior Trustee, among other things, the Cherokee Landfill and the adjacent Hamby Property and the Debtor's leasehold estate.

On March 20, 2023, the Bond Trustee was appointed as successor bond trustee under the Indenture.

## III.
## ARGUMENT

### A.  The Bond Trustee Has an Interest in the Cash Collateral

There is no serious dispute that the Bond Trustee is a secured creditor with an interest in the cash collateral. The Debtor characterizes the income collected from the operation of its business as cash the Bond Trustee "may" claim as cash collateral but provides no basis to dispute such funds are the collateral of the Bond Trustee. The Cash Collateral Motion requests the use of "income collected from the operation of" the landfill and related business.[6] To the extent the Debtor's income was earned prepetition, it would be cash of the Debtor subject to the Bond Trustee's lien on cash. To the extent the income was earned post-petition from the any agreement that was assigned to the Bond Trustee as security for the Bonds, then any such income would be "proceeds, products, offspring, or profits of" such pre-petition collateral. Under Section 552(b) of the Bankruptcy Code, the Bond Trustee's security interest in any of these proceeds extends to such proceeds post-petition.

### B.  The Debtor Cannot Use the Bond Trustee's Cash Collateral Without Either the Bond Trustee's Consent or Providing the Bond Trustee with Adequate Protection

The Cash Collateral Motion proposes to use the Bond Trustee's cash collateral without satisfying the Bankruptcy Code's requirements. The Bankruptcy Code is clear: the Debtor cannot use cash collateral unless the Bond Trustee consents, or the debtor provides adequate protection.

---

[6] Cash Collateral Motion at 1.

6

Specifically, section 363(c)(2) makes clear that a Debtor may not use cash collateral unless "each entity that has an interest in such cash collateral consents" or "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) further provides that, upon request by a secured creditor, the court "shall prohibit or condition" the use of cash collateral "as is necessary to provide adequate protection of" the secured creditor's interest in the cash collateral. 11 U.S.C. § 363(e).

Adequate protection comes in many forms. Section 361 of the Bankruptcy Code provides three examples of adequate protection: cash payments, additional or replacement liens, or the realization of the indubitable equivalent of the Bond Trustee's liens. 11 U.S.C. § 361.

The Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1). The Debtor can only meet this burden by a showing on a "firm evidentiary basis." *In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) ("A finding of adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis.").

Here the Debtor acknowledges the Bond Trustee has not consented to the relief sought in the Cash Collateral Motion.[7] And the Debtor does not even claim to provide adequate protection to the Bond Trustee for the use of its cash collateral. Moreover, the projections included with the Budget do not appear to be grounded in reality, much less any firm evidentiary basis (or indeed, any evidentiary basis at all). Consequently, the Debtor's motion cannot be granted. While Bankruptcy Rule 4001(b)(2) states that a court at a preliminary hearing may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing," the Debtor still must make an adequate showing to meet this requirement. It has not. Beyond mere conclusory statements, the Debtor has failed to meet its

---

[7] Cash Collateral Motion at 3.

7

burden to show that immediate and irreparable harm to the estate would result. The Court should deny the Debtor's request.

## IV.
## RESERVATION OF RIGHTS

The Bond Trustee reserves all rights with respect to the Cash Collateral Motion and the Equipment Financing Motion, including to object to both motions for any reason at any further preliminary or final hearings.

Dated: March 22, 2023

                                                  /s/ Lee B. Hart
Lee B. Hart
Georgia Bar No. 502311
Nelson Mullins Riley & Scarborough, LLP
Atlantic Station, Suite 1700
201 17th Street NW
Atlanta, GA 30363
Email: lee.hart@nelsonmullins.com
Telephone: (404) 322-6349

Randall Brater (*pro hac vice* pending)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006
Email: randall.brater@afslaw.com

Beth M. Brownstein (*pro hac vice* pending)
Michael Guippone (*pro hac vice* pending)
ArentFox Schiff LLP
1301 Avenue of the Americas
New York, NY 10019
Email: beth.brownstein@afslaw.com
       michael.guippone@afslaw.com

*Attorneys for UMB Bank, as Bond Trustee*

**Certificate of Service**

I hereby certify that this day I caused to be served the foregoing *UMB Bank's Preliminary Objection to the Debtor's Cash Collateral Motion and Reservation of Rights* upon all parties registered to receive electronic notice thereof via the Court's electronic CM/ECF filing system.

March 22, 2023

/s/ *Lee B. Hart*
Lee B. Hart