**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 23-52262-SMS** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **JUDGE SAGE M. SIGLER** |
| | ) | |
| **KOMATSU FINANCIAL LIMITED** | ) | |
| **PARTNERSHIP,** | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | **CONTESTED MATTER** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | |
| | ) | |
| Respondent. | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Komatsu Financial Limited Partnership has filed a **Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362** and related papers with the Court seeking an Order granting Komatsu Financial Limited Partnership relief from the automatic stay with respect to the Financed Equipment (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion at the following toll-free number: (833) 568-8864; Meeting ID 161 179 4270, at 10:00 a.m. on May 17, 2023 in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written

response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  April 20, 2023                                    Respectfully submitted,

                                                          BAKER, DONELSON, BEARMAN,
                                                          CALDWELL & BERKOWITZ, P.C.

                                                          /s/ Kathleen G. Furr
                                                          Kathleen G. Furr
                                                          Georgia Bar No. 589008
                                                          Baker Donelson
                                                          Monarch Plaza,
                                                          3414 Peachtree Road, N.E., Suite 1500
                                                          Atlanta, GA 30326
                                                          T: 404.221.6533
                                                          F: 404.238.9787
                                                          kfurr@bakerdonelson.com

                                                          *Counsel for Movant Komatsu Financial
                                                          Limited Partnership*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 23-52262-SMS** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | **CHAPTER 11** |
| | ) | |
| _____Debtor._____ | ) | **JUDGE SAGE M. SIGLER** |
| | ) | |
| **KOMATSU FINANCIAL LIMITED** | ) | |
| **PARTNERSHIP,** | ) | |
| | ) | |
| **Movant.** | ) | |
| | ) | |
| **v.** | ) | **CONTESTED MATTER** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | |
| | ) | |
| _____Respondent._____ | ) | |

### MOTION OF KOMATSU FINANCIAL LIMITED PARTNERSHIP
### FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

Komatsu Financial Limited Partnership ("Komatsu") hereby submits its motion (the "Motion") for relief from the automatic stay pursuant to 11 U.S.C. § 362.  In support of this Motion, Komatsu respectfully represents as follows:

### JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**A.      The Contracts with Non-Debtor Parties.**

3.      For good and valuable consideration, CWI Alabama, LLC ("CWI Alabama") made, executed, and delivered to Komatsu (as assignee of Tractor & Equipment Company) four (4) Security Agreement – Conditional Contracts (collectively, the "Finance Contracts"), pursuant to

which it purchased certain equipment and agreed to pay to Komatsu certain amounts set forth therein.

4.     Pursuant to the Finance Contracts, as security for the repayment of the indebtedness and all other obligation of every type of CWI Alabama to Komatsu, CWI Alabama granted to Komatsu a purchase money, first priority lien on and security interest in the following equipment (collectively, the "Financed Equipment"):

| Security Agreement | Financed Equipment |
|---|---|
| 005 | One (1) Komatsu PC490LC-10 Hydraulic Excavator (Serial No. A40251); One (1) Komatsu D61PX-23 Crawler Dozer (Serial No. 31458); and One (1) Komatsu D85PX-18 Crawler Dozer (Serial No. 23107) |
| 006 | One (1) Komatsu HM400-5 Articulated Truck (Serial No. 10282) |
| 007 | One (1) Komatsu WA270-8 Wheel Loader (Serial No. A29061) |
| 009 | One (1) Komatsu D61PXI-24 Crawler Dozer (Serial No. B60660) |

5.     For good and valuable consideration, CWI Alabama made, executed, and delivered to Komatsu (as assignee of Tractor & Equipment Company) three (3) Parts & Service Security Agreement – Conditional Sales Contracts, and CWI Enterprises, LLC ("CWI Enterprises", together with CWI Alabama, the "Non-Debtor Parties") made, executed, and delivered to Komatsu one (1),  Parts & Service Security Agreement – Conditional Sales Contracts (the "Parts & Service Contracts"), pursuant to which they agreed to pay to Komatsu certain amounts set forth therein.

6.     Pursuant to the Parts & Service Contracts, as security for the repayment of the indebtedness and all other obligation of every type of the Non-Debtor Parties to Komatsu, the Non-Debtor Parties granted to Komatsu a security interest in the following equipment:

| Service Agreement | Financed Equipment |
|---|---|
| 002 (CW Enterprises) | Secured by Contract 005 and 006 Equipment |
| 011 (CW Alabama): | Secured by Contract 005 Equipment |

2

| Service Agreement | Financed Equipment |
|---|---|
| 012 (CW Alabama): | Secured by Contract 009 Equipment |
| 013 (CW Alabama): | Secured by Contract 006 and 007 Equipment and certain of the Contract 005 Equipment |

7.      For good and valuable consideration, CWI Alabama also made, executed, and delivered to Komatsu a Cross Collateral Security Agreement dated August 31, 2020 (the "Cross Collateral Security Agreement", together with the Finance Contracts and Parts & Service Contracts, the "Contracts"), pursuant to which, among other things, CWI Alabama agreed that (i) each unit of the Financed Equipment shall secure CWI Alabama's payment and performance under each of the Contracts, (ii) a default by CWI Alabama under any one or more of the aforementioned Contracts shall constitute a default by CWI Alabama under each of the aforementioned Contracts, and (iii) Komatsu has a first-priority lien on all of the Financed Equipment.

8.      Due to the assignments, Komatsu is the proper party-in-interest.

9.      To notify others of its security interest in the Financed Equipment, Komatsu filed UCC Financing Statements regarding the Financed Equipment (the "Financing Statements") with the Secretary of State of Alabama (for the Contract 005, 006, 007, 009, 011, 012 and 013 Equipment) and Georgia (for the Contract 002 Equipment).

10.      Copies of the Finance Contracts, Parts & Service Contracts, Assignments, Cross Collateral Security Agreement, and Financing Statements are annexed as **Exhibit A** to the Declaration of Jason Lee in Support of the Motion (the "Lee Dec."), submitted herewith and incorporated by reference herein.

11.      Komatsu maintains its purchase money security interest in the Financed Equipment.

12.      Pursuant to the Contracts, CW Alabama is the owner of the Financed Equipment.

**B.**     <u>The Debtor's Possession of the Financed Equipment and Bankruptcy Filing</u>.

13.     Following the petition date of March 7, 2023 (the "<u>Petition Date</u>"), Komatsu was informed that CWI Cherokee LF LLC (the "<u>Debtor</u>") was in possession of the Financed Equipment and, upon information and belief, still is.

14.     The Debtor is not a party to the Contracts. The Contracts prohibit CWI Alabama from transferring the Financed Equipment to a third party without Komatsu's written consent, and at no point has Komatsu consented to Debtor's possession or use of the Financed Equipment.

15.     Furthermore, prior to the Petition Date, and with the exception of Contract 006, CW Alabama failed to make its required monthly payments for the Contracts in January 2023, and each month thereafter.

16.     As a result of the breach, the Contracts and the Uniform Commercial Code permit Komatsu, as the secured party, to exercise all of its rights and remedies against the Financed Equipment.

<u>RELIEF REQUESTED</u>

17.     By this Motion, Komatsu moves for entry of an order granting it immediate relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code to allow it to retrieve and dispose of the Financed Equipment in accordance with the Contracts and applicable law.

<u>BASIS FOR RELIEF REQUESTED</u>

18.     Pursuant to Section 362(d) of the Bankruptcy Code:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay… such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property…, if—

4

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization….

11 U.S.C. § 362(d).

19.    Pursuant to Section 362(d)(2) of the Bankruptcy Code, relief from the automatic

stay *must* be granted if (i) the debtor lacks equity in property and (ii) such property is not necessary

for an effective reorganization.  11 U.S.C. § 362(d)(2).

20.    Accordingly, under Section 362(d) of the Bankruptcy Code, a creditor may obtain

relief from the stay when the debtor has no equity in the property and the property is not necessary

to an effective reorganization that is in prospect.  *See* 11 U.S.C. § 362(d); *see also United Savings*

*Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76, 108 S.Ct. 626, 98

L.Ed.2d (1988).

21.    Regarding the burdens on each party in a hearing for relief under Section 362(d)(2),

Section 362(g) of the Bankruptcy Code states:

(1) the party requesting such relief has the burden of proof on the issue of the

debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. 362(g).

22.    Here, Komatsu easily satisfies its burden: Debtor has no equity in the Financed

Equipment because it did not hold title to it as of the Petition Date.  *In re Hamilton,* No. BAP CC-

04-1434-MATK, 2005 WL 6960211, at *4 (B.A.P. 9th Cir. Aug. 1, 2005).  Additionally, Debtor

has filed its Schedules [Dkt. No. 65], which does not reference Komatsu as a creditor or the

Financed Equipment as assets.

23.     The burden now shifts to Debtor to prove that the Financed Equipment is necessary to the Debtor's effective reorganization *in prospect*.   The Debtor is unlikely to make a showing that it can generate sufficient funds to service the Contracts, as Komatsu has not received any of the monthly payments due and owing under the Contracts subsequent to the Petition Date.

24.     Based upon the foregoing, Komatsu requests that this Court lift the automatic stay immediately to permit Komatsu to enforce its rights under the Contracts and applicable law, including without limitation, the right to repossess and dispose of the Financed Equipment.

25.     Moreover, and notwithstanding Rules 4001(a)(3) or 7062 of the Federal Rules of Bankruptcy Procedure, grounds exist for any order lifting the automatic stay pursuant to this Motion to be effective immediately.

**WHEREFORE**, for all the reasons set forth herein, Komatsu respectfully requests that this Court enter an Order (i) immediately terminating the automatic stay pursuant to Section 362(d) of the Bankruptcy Code to allow Komatsu to repossess and dispose of the Financed Equipment and enforce any and all rights and remedies available to Komatsu under the Contracts, (ii) waiving the requirements of Federal Rule of Bankruptcy 4001(a)(3) so that Komatsu can immediately enforce, implement, and otherwise act upon the Order, and (iii) granting such other and further relief as this Court deems just and appropriate.


Dated:  April 20, 2023                              Respectfully submitted,

                                                    BAKER, DONELSON, BEARMAN,
                                                    CALDWELL & BERKOWITZ, P.C.

                                                    /s/ Kathleen G. Furr
                                                    Kathleen G. Furr
                                                    Georgia Bar No. 589008
                                                    Baker Donelson
                                                    Monarch Plaza,

3414 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326
T: 404.221.6533
F: 404.238.9787
kfurr@bakerdonelson.com

*Counsel for Movant Komatsu Financial
Limited Partnership*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-52262-SMS |
| | ) | |
| CWI CHEROKEE LF LLC, | ) | CHAPTER 11 |
| | ) | |
| _____Debtor._____ | ) | JUDGE SAGE M. SIGLER |
| | ) | |
| KOMATSU FINANCIAL LIMITED | ) | |
| PARTNERSHIP, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| CWI CHEROKEE LF LLC, | ) | |
| | ) | |
| _____Respondent._____ | ) | |

**DECLARATION OF JASON LEE IN SUPPORT OF MOTION
OF KOMATSU FINANCIAL LIMITED PARTNERSHIP FOR
RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

Jason Lee, declares and says:

1.      I am the Senior Manager, Operations for Komatsu[1] and am authorized to make this

declaration on Komatsu's behalf.  I submit this declaration in further support of the Motion

2.      I have personally worked on Komatsu's file relating to Finance Contracts (as

defined below) and am personally familiar with Komatsu's lending activities in the matters

involved in this case.  As to the facts contained herein, I know them to be true of my own

knowledge or I have gained knowledge of them from Komatsu's business records of certain acts,

conditions, or events, which business records were made at or near the time of such acts,

conditions, or events, and which records were recorded by, or from information transmitted by, a

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Motion of Komatsu Financial Limited Partnership for Relief from the Automatic Stay Pursuant to 11 U.S. C. § 362(d)* (the "Motion").

person with knowledge of such acts, conditions, or events who had a business duty to accurately record such acts, conditions, or events. Any such records are kept in the course of Komatsu's regularly conducted business activity, and it is Komatsu's regular practice to prepare such documents. Komatsu is in the business of leasing and financing various kinds of equipment.

3.      I am personally familiar with the record-keeping procedures used by Komatsu and with the records and files relating to the Finance Contracts that Komatsu maintains in the ordinary course of its business. As a Senior Manager, Operations for Komatsu, my duties include safeguarding, managing, and maintaining the files regarding certain of its leasing and financing activities. I am the individual at Komatsu responsible for safeguarding, managing, and maintaining Komatsu's files regarding the Finance Contracts, the Financed Equipment (as hereinafter defined), and various other documents. As the custodian of the Komatsu files regarding the Finance Contracts, I am personally familiar with the contents of the files, including the documents described herein. As part of my duties at Komatsu, I am required to periodically review the contents of Komatsu's files regarding the Finance Contracts.

4.      Komatsu is a party to:

(i)     that certain Equipment Refinancing and Security Agreement with the effective date of  December 26, 2014 ("Contract No. 005") by and between Komatsu and CWI Alabama, LLC ("CWI Alabama"), whereby CWI Alabama granted to Komatsu a security interest in One (1) Komatsu PC490LC-10 Hydraulic Excavator (Serial No. A40251); One (1) Komatsu D61PX-23 Crawler Dozer (Serial No. 31458); and One (1) Komatsu D85PX-18 Crawler Dozer (Serial No. 23107) (the "Contract 005 Equipment");

2

(ii)    that certain Security Agreement-Conditional Sales contract dated August 31, 2020 ("Contract No. 006") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a purchase money, first priority lien on and security interest in a Komatsu HM400-5 Articulated Truck (Serial No. 10282) (the "Contract No. 006 Equipment");

(iii)    that certain Security Agreement-Conditional Sales contract dated June 30, 2020 ("Contract No. 007") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a purchase money, first priority lien on and security interest in a Komatsu WA270-8 Wheel Loader (Serial No. A29061) (the "Contract No. 007 Equipment");

(iv)    that certain Security Agreement-Conditional Sales contract dated September 30, 2021 ("Contract No. 009", together with Contract Nos. 005, 006, and 007, the "Finance Contracts") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a purchase money, first priority lien on and security interest in a Komatsu D61PXI-24 Crawler Dozer (Serial No. B60660) (the "Contract No. 009 Equipment, and collectively with the Contract No. 005, 006, and 007 Equipment, the "Financed Equipment");

(v)    that certain Parts & Service Security Agreement – Conditional Sales Contract dated August 31, 2022 ("Contract No. 002") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Enterprises, LLC ("CWI Enterprises"),

3

whereby CWI Enterprises granted to Komatsu a security interest in the Contract 005 Equipment and Contract 006 Equipment;

(vi)     that certain Parts & Service Security Agreement – Conditional Sales Contract dated October 31, 2021 ("Contract No. 011") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a security interest in the Contract 005 Equipment;

(vii)    that certain Parts & Service Security Agreement – Conditional Sales Contract dated January 31, 2022 ("Contract No. 012") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a security interest in the Contract 009 Equipment; and

(viii)   that certain Parts & Service Security Agreement – Conditional Sales Contract dated March 18, 2022 ("Contract No. 013", collectively with Contract No. 002, Contract No. 011 and Contract No. 012, the "Parts & Service Contracts") by and between Komatsu (as assignee of Tractor & Equipment Company) and CWI Alabama, whereby CWI Alabama granted to Komatsu a security interest in the Contract 006 Equipment and Contract 007 Equipment and certain of the Contract 005 Equipment.

5.      For good and valuable consideration, CWI Alabama also made, executed, and delivered to Komatsu a Cross Collateral Security Agreement dated August 31, 2020 (the "Cross Collateral Security Agreement", together with the Finance Contracts and Parts & Service Contracts, the "Contracts"), pursuant to which, among other things, CWI Alabama agreed that (i) each unit of the Financed Equipment shall secure CWI Alabama's payment and performance under each of the Contracts, (ii) a default by CWI Alabama under any one or more of the aforementioned

4

Contracts shall constitute a default by CWI Alabama under each of the aforementioned Contracts, and (iii) Komatsu has a first-priority lien on all of the Financed Equipment.

6.      To notify others of its security interest in the Financed Equipment, Komatsu filed UCC Financing Statements regarding the Financed Equipment (collectively, the "Financing Statements") with the Secretary of State of Alabama (for the Contract 005, 006, 007, 009, 011, 012 and 013 Equipment) and Georgia (for the Contract 002 Equipment).

7.      Copies of the Finance Contracts, Parts & Service Contracts, Assignments, Cross Collateral Security Agreement, and Financing Statements are attached hereto as **Exhibit A**.

8.      Komatsu maintains its purchase money security interest in the Financed Equipment.

9.      Pursuant to the Finance Contracts, CW Alabama is the owner of the Financed Equipment.

10.     Following the petition date of March 7, 2023 (the "Petition Date"), Komatsu was informed that CWI Cherokee LF LLC (the "Debtor") was in possession of the Financed Equipment and, upon information and belief, still is.

11.     The Debtor is not a party to the Contracts.  The Contracts prohibit CWI Alabama from transferring the Financed Equipment to a third party without Komatsu's written consent, and at no point has Komatsu consented to Debtor's possession or use of the Financed Equipment.

12.     Furthermore, prior to the Petition Date, and with the exception of Contract 006, CW Alabama failed to make its required monthly payments for the Contracts in January 2023, and each month thereafter.

13.     As a result of the breach, the Contracts and the Uniform Commercial Code permit Komatsu, as the secured party, to exercise all of its rights and remedies against the Financed Equipment.

14.     As of the date hereof, Komatsu has not received any of the postpetition payments due and owing under the Contracts.

15.     I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct.


DATED:  April 17, 2023

                                        By: _____
                                            Jason Lee
                                            Operations Manager for
                                            Komatsu Financial Limited Partnership

EXHIBIT A

DocuSign Envelope ID: 3DA64A13-8DA9-4D52-A884-959B355E909C

**KOMATSU FINANCIAL**

## EQUIPMENT REFINANCING AND SECURITY AGREEMENT

Subject to the attached Term and Conditions, Komatsu Financial Limited Partnership, a Delaware limited partnership with its principal place of business at 1701 Golf Road, Suite 1-300, Rolling Meadows, IL ("**Lender**") hereby agrees to lend to the Borrower described below, and Borrower hereby agrees to borrow from Lender, the principal amount set forth below (the "**Loan**"). Borrower promises to pay to the order of Lender the Loan, together with accrued interest thereon, on or before the maturity date Maturity Date. The Loan will be secured by the item(s) of equipment listed below (collectively, the "**Equipment**").

**Effective Date of Agreement**: December 26, 2014

**Borrower Information**

| | |
|---|---|
| **Full Legal Name**: CWI ALABAMA, LLC | **Physical Location**: 3284 NORTHSIDE PARKWAY Suite 600 Atlanta, GA 30327 |
| **Address 1**: 3284 NORTHSIDE PARKWAY Suite 600  Atlanta, GA 30327 | |
| **Address 2**: | **State Charter Number**: |
| **Contact Person**: | **State of Formation**: AL |
| **Tel**: | **SSN**: |

**Loan Amount and Payment Information**

| | |
|---|---|
| **Principal Amount of Loan**: | $638,269.74 |
| **Interest Rate**: | 3.00 % per annum, fixed, compounded monthly |
| **Term**: | 38 Months |
| **Payment Schedule**: | **First Payment Date**: July 26, 2020 |
| | **Maturity Date**: August 26, 2023 |
| | **Periodic Payment Amount**: $17,628.01 |
| | **Payment Period**: [38 Monthly Payments] |
| | **Total of Payments**: $669,864.38 |

**Equipment Description**

| # | Manufacturer | Model | VIN/Serial # | Type / Description |
|---|---|---|---|---|
| 1 | Komatsu | PC490LC-10 | A40251 | Hydraulic Excavator |
| 1 | Komatsu | D61PX-23 | 31458 | Crawler Dozer |
| 1 | Komatsu | D85PX-18 | 23107 | Crawler Dozer |

**Insurance Requirement**

Borrower shall maintain the following insurance: _____

*Intending to be legally bound, Lender and Borrower have executed this Agreement as of the Effective Date set forth above.*

| **LENDER:** | **BORROWER:** |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | CWI ALABAMA, LLC |
| By: *Joe Kennedy* | By: |
| Print Name: Joe Kennedy | Print Name: Steve Witmer |
| Title: Finance Manager | Title: Manager |

Borrower's Initials

DocuSign Envelope ID: 3DA64A13-8DA9-4D52-A884-950B355E009C

ACCOUNT NO
-005

## TERMS AND CONDITIONS

1. **Disbursement and Payment of Loan.** All proceeds of the Loan shall be advanced or disbursed in full to Borrower (or for the benefit of Borrower) at the Effective Date and no further advances shall be allowed. The Loan is made on a non-revolving basis, and any amounts repaid may not be borrowed. The Loan shall bear interest from the Effective Date until the outstanding principal balance of the Loan, all accrued but unpaid interest thereon and all other charges, fees or expenses hereunder have been repaid to Lender in full at the Interest Rate. All interest calculations under this Agreement shall be made based on a year of 360 days for the actual number of days in each interest period.

   Borrower shall make payments of principal and interest on the Loan, in the amounts and on the dates set forth on the cover page hereto, provided however that all outstanding principal and accrued interest shall be due and payable in full on or before the Maturity Date. Any prepayment of the indebtedness, in whole or in part, may be subject to a premium or penalty if set forth on the cover page. Payments received will be applied in the following order: (a) to charges, fees and expenses (including reasonable attorneys' fees); (b) to accrued interest; and (c) to principal. Any prepayments will be applied in the foregoing order but shall not relieve Borrower of Borrower's obligation to make the periodic payments.

   Borrower also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this Agreement. Upon maturity, whether by acceleration or otherwise, or upon the occurrence of an Event of Default (as defined below), in addition to any other remedies to which Lender may be entitled, the applicable rate of interest on the Loan shall be increased to 1.50% per month in excess of the Interest Rate (the "**Default Rate**"), but not more than the maximum nonusurious rate of interest for which Lender is permitted under applicable law to charge with respect to the Loan (the "**Highest Lawful Rate**".)

2. **Security Interest.** In order to secure the Obligations (as defined below), Lender hereby retains, and Borrower hereby grants, a security interest under the Uniform Commercial Code in effect in the state of Illinois (the "**Uniform Commercial Code**") in and to all of the following, whether now owned or hereafter acquired: (i) the Equipment, (ii) all leases and other documents relating to the Equipment (including all rights under and benefits of the terms, covenants and provisions thereof) (iii) all revenues relating to the Equipment; and (iv) all replacements, substitutions, additions, attachments, repairs, accessions and proceeds of either of the foregoing, including amounts payable under any insurance policies with respect thereto (the "**Collateral**").

   Borrower hereby authorizes Lender to file one or more UCC-1 financing statements as deemed necessary or desirable by Lender (including, but not limited to any information statements as set forth more fully in Uniform Commercial Code Section 9-518). Borrower hereby authorizes Lender or its agent or assigns to sign and execute any other instrument deemed necessary by Lender to perfect the security interest herein above granted to Lender. Borrower will assist Lender, including by providing any necessary signatures or approvals and taking any other actions reasonably required by Lender, in making each other filing or taking each other action necessary to perfect Lender's security interest in the Collateral from time to time, which may include actions in addition to the filing of UCC-1 Financing Statements in the case of automotive, real estate and other Collateral subject to additional requirements for the perfection of Lender's security interest therein.

   As used herein, "**Obligations**" means and includes the Loan and all loans, advances, debts, fees (including but not limited to reasonable attorneys' fees), liabilities, obligations, covenants and duties owing to Lender from Borrower of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, including but not limited to those arising under: (i) this Agreement, or (ii) under any other agreement, instrument or document, whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, guaranty, indemnification or in any other manner, whether direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising and whether or not contemplated by Borrower or Lender on the Effective Date.

3. **Location of Equipment.** Borrower and Lender agree that regardless of the manner of affixation, all Collateral that is personal property shall remain personal property and not become part of any real estate. Borrower shall keep the property at the location set forth on the cover page, and will notify Lender promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Lender.

4. **Payment of Expenses by Lender.** At its option, Lender may discharge taxes, liens, security interests or such other encumbrances as may attach to the Collateral, may pay for required insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, as determined by Lender to be necessary, and such expenditures will become part of the Obligations. Borrower will reimburse Lender on demand for any payment so made or any expense incurred by Lender pursuant to the foregoing authorization, and the Collateral also will secure any advances or payments so made or expenses so incurred by Lender.

5. **Borrower's Warranties and Representations.** Borrower warrants, represents and covenants that: (a) If Borrower is an entity, it is the type of legal entity set forth in the introductory paragraph of this Agreement, duly organized and existing and in good standing under the laws of the state of its formation, and qualified or licensed to do business in all states in which the laws thereof require Borrower to be so qualified or licensed; (b) Borrower is justly indebted to Lender for the full amount of the Loan, all interest accruing on the principal balance of the Loan, and all other amounts due pursuant to this Agreement; (c) Borrower is the true and lawful owner of the Equipment, has good, valid and unencumbered title to such Equipment, and has not sold or otherwise disposed of all or any part of the Equipment; (d) except for the security interest granted hereby, the Collateral is free from and will be kept free from all liens, claims, and security interests, Borrower has good and marketable title to the Collateral, has not made any prior sale, pledge, encumbrance, assignment, lease or other disposition of any kind of the Collateral and the same is free from all encumbrances and rights of set off of any kind; (e) no financing statement covering the Collateral or any proceeds is on file in favor of anyone other than Lender but if such other financing statement is on file, it has been terminated or subordinated to the satisfaction of Lender; (f) Borrower has furnished Lender with copies all other documents that it may have reasonably required in connection with the transactions provided for in this Agreement (including, if Borrower is a business entity or other non-natural person, certified copies of resolutions of Borrower's governing body or equity holders, as may be required by Borrower's governing documents, authorizing the execution of this Agreement and the transactions and obligations contemplated hereby; (g) all information supplied and statements made by Borrower in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this Agreement with respect to this transaction are and shall be true, correct, valid and genuine; (h) Borrower has full right, power and authority to enter into execute, deliver and perform this Agreement and in so doing it is not violating any law or regulation or agreement with third parties; (i) it has taken all such action as may be necessary or appropriate to make this Agreement binding upon it; (j) there exists no Event of Default prior to the making of the Loan, and there will exist no Event of Default upon and after giving effect to the Loan; and (k) Borrower shall use the proceeds of the Loan exclusively for business or commercial purposes consistent with all applicable laws and statutes, and no portion of the proceeds will be used for (i) personal, family or household purposes; (ii) purchasing or carrying any margin securities, (iii) reducing or retiring any indebtedness which was originally incurred to purchase any margin securities, or (iv) any other purpose not permitted by Regulation U of the Board of Governors of the Federal Reserve System, as in effect from time to time.

Borrower's Initials

DocuSign Envelope ID: 3DA64A13-8DA9-4D52-A894-959B355E909C



ACCOUNT NO
-005

6. **Events of Default; Acceleration.** The following are events of default under this Agreement (each an "**Event of Default**") which will allow Lender to take such action as it deems necessary:

(a) any of Borrower's monetary Obligations to Lender under any agreement is not paid when due;

(b) Borrower breaches any covenant, representation, warranty or provision hereof, or of any other instrument or agreement delivered by Borrower to Lender in connection with this or any other transaction;

(c) any representation, warranty, statement, report or certificate made or delivered by Borrower, or if any Borrower is an entity, any of Borrower's officers, members, managers, employees, or agents, to Lender is not true and correct in all material respects, whether made in this Agreement or otherwise;

(d) there is a default with respect to any other indebtedness of Borrower owed to another creditor for borrowed money;

(e) Borrower (if an individual) dies, becomes insolvent or (if a business entity) ceases to do business as a going concern;

(f) it is determined Borrower has given Lender false information of a material nature regarding its financial condition;

(g) any of the Collateral is lost or destroyed;

(h) any of the Collateral ceases to be subject to a perfected lien of Lender, Borrower permits any other lien upon the Collateral, or Borrower sell the Equipment or any interest therein;

(i) a petition in bankruptcy or for arrangement or reorganization be filed by or against Borrower;

(j) Borrower becomes unable to pay its debts as they become due, is generally not paying its debts as they become due, or admits its inability to pay its debts as they mature;

(k) any property of Borrower be attached or a receiver be appointed for Borrower;

(l) whenever Lender in good faith believes the prospect of payment or performance is impaired or in good faith believes the Collateral is insecure;

(m) any guarantor, surety or endorser for Borrower defaults in any obligation or liability to Lender or any guaranty obtained in connection with this transaction is terminated or breached;

(n) a proceeding is filed by or commenced against Borrower voluntarily or involuntarily terminating or dissolving Borrower;

(o) in the event a judgment or writ or order of attachment or garnishment is made and issued against Borrower or any of Borrower's property;

(p) the failure of Borrower to provide Lender with additional collateral if in the opinion of Lender at any time or times, the market value of any of the Collateral has depreciated;

(q) if Borrower is an entity: (i) any sale, transfer, disposition or issuance of any equity securities of Borrower, (ii) the owners of Borrower's equity securities as of the Effective Date cease to own and have voting control of more than 51% of the voting securities of Borrower determined on a fully diluted basis, (iii) the sale of all or substantially all of the assets Borrower's assets; or (iv) any agreement to do any of the foregoing; or

(r) Lender, in good faith, believes its prospect of payment or performance of the Obligations or the covenants set forth in this Agreement is impaired.

**If Borrower shall be in default hereunder, (i) the Loan herein described and all other Obligations shall, if Lender shall so elect, without notice or demand of any kind (which are hereby expressly waived), be accelerated and become immediately due and payable; (ii) the Loan, together with all unpaid interest will from the date of the occurrence of the Event of Default bear interest at the Default Rate, (iii) Borrower will pay to Lender all reasonable attorneys' fees, court costs and expenses incurred by Lender in connection with Lender's efforts to obtain, foreclose or otherwise liquidate the Collateral or collect the Obligations, including any such fees, costs and expenses incurred by Lender in any bankruptcy or insolvency proceeding, and (iv) Lender may exercise from time to time any of the rights and remedies available to Lender under this Agreement and applicable law, including, without limitation, the remedies set forth in Section 7 below.**

7. **Lender's Remedies After Default; Consent to Enter Premises.** So long as any Obligations are owed by Borrower to Lender hereunder, Lender shall have all the rights and remedies provided by this Agreement and provided to a secured party under the Uniform Commercial Code and any other applicable law or equity. After default by Borrower, Lender's rights and remedies include but are not limited to a number of choices. Borrower acknowledges that if it defaults, Lender is entitled to take all lawful and equitable measures to collect payment of the Obligations and to obtain for itself the benefit of the bargain under this Agreement.

Consequently, Borrower agrees that Lender, among its other rights and remedies, may (a) exercise any one or more of the rights and remedies accruing to a "secured party" under the Uniform Commercial Code and any other applicable law upon a default by a debtor; (b) itself or its agent enter the premises or upon the land where the Collateral is located and without removing the Collateral and without charge or liability to Lender therefor, render any equipment and other goods which is part of the Collateral unusable and/or take possession of the Collateral without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace and use the same for the purpose of collecting, preparing and disposing of the Collateral; (c) sell or otherwise dispose of the Collateral at public or private sale for cash or credit, provided, however, that Borrower shall be credited with the net proceeds of such sale only when such proceeds are actually received by Lender; (d) take control, in any manner, of any item of payment or proceeds of the Collateral and to direct all account debtors to make payments directly to Lender; (e) notify any or all account debtors that the accounts have been assigned to Lender and that Lender has a first position priority security interest and lien therein; (f) direct such account debtors to make all payments due from them to Borrower upon the accounts directly to Lender; and (g) enforce payment of and collect, by legal proceedings or otherwise, the accounts in the name of Lender and Borrower.

**Borrower therefore agrees that Lender by itself or its agent may, without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Borrower or any agent of Borrower where the Collateral may be or where Lender believes the Collateral may be, and using any reasonable force with respect to the Collateral and any Collateral connected to the Collateral, disassemble, render unusable, disconnect and separate all Collateral from any other Collateral and/or repossess and remove all or any item of the Collateral.**

Borrower will not hinder or delay Lender or its agent in any way and will, if requested, assist Lender or its agent in disassembling and/or removing the Collateral. Upon an Event of Default, Borrower, immediately upon demand by Lender, shall assemble the Collateral and make it available to Lender at a place or places to be

Borrower's Initials



ACCOUNT NO
-005

designated by Lender which are reasonably convenient to both parties. Borrower expressly waives all further rights to possession of the Collateral after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the Collateral to Borrower until all amounts secured hereby are fully paid in money.

In connection with the foregoing, Borrower agrees that, on or at any time after the occurrence of an Event of Default, Lender may request the appointment of a receiver of the Collateral, and Borrower expressly consents to the appointment of such a receiver, who will be entitled to a reasonable fee for so managing the Collateral. Such appointment may be made without notice, and without regard to: (i) the solvency or insolvency, at the time of application for such receiver, of the person or persons, if any, liable for the payment of the Obligations; and (ii) the value of the Collateral at such time. Such receiver will have the power to take possession, control and care of the Collateral and to collect all accounts resulting therefrom.

Unless Borrower otherwise agrees in writing after an Event of Default and unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Borrower reasonable notice of the time and place of any public sale of the Collateral or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Borrower shown above at least ten (10) days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Borrower understands that Lender's rights are cumulative and not alternative and that Borrower will remain fully liable for any deficiency remaining after disposition of the Collateral. Borrower agrees that Lender may, if Lender deems it reasonable, postpone or adjourn any such sale of the Collateral from time to time by an announcement at the time and place of sale, without being required to give a new notice of sale. Further, Borrower agrees that Lender has no obligation to preserve rights against prior parties to the Collateral.

Borrower recognizes that if it fails to perform, observe or discharge any of the Obligations, no remedy of law will provide adequate relief to Lender, and Borrower agrees that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

8.  **Waiver of Defaults; Agreements Inclusive.** Lender may in its sole discretion waive a default or cure a default at Borrower's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this Agreement shall bind Lender unless in writing signed by Lender. No oral agreement shall be binding. No modification or waiver of any provision of this Agreement nor consent to any departure by Borrower therefrom, will be established by conduct, custom or course of dealing. Not notice to or demand on Borrower in any case will entitle Borrower to any other or further notice or demand in the same, similar or other circumstance.

9.  **Borrower's Agreements.** Borrower agrees: (a) to defend at Borrower's own cost any action, proceeding or claim affecting the Collateral; (b) to pay reasonable attorneys' fees and other expenses incurred by Lender in enforcing its rights after Borrower's default or during the continuation of any Event of Default; (c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the Collateral or this Agreement and this obligation shall survive the termination of this Agreement; (d) that if a certificate of title be required or permitted by law, Borrower shall obtain such certificate with respect to the Collateral, showing the security interest of Lender thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Lender; (e) that Borrower will not misuse, fail to keep in good repair, secrete, or, without the prior written consent of Lender, and notwithstanding Lender's claim to proceeds, sell, rent, lend, encumber or transfer any of the Collateral; (f) that Lender may enter upon Borrower's premises or wherever the Collateral may be located at any reasonable time to inspect the Collateral; (g) not to dispose of any Collateral or enter into any leases or documents with respect to the Equipment outside the ordinary course of Borrower's business without the prior written consent of Lender; and (h) upon request of Lender, from time to time, to deliver to Lender any or all original documentation with respect to the Equipment, and to execute and deliver to Lender any and all further instruments and documents related to the Equipment.

Borrower hereby grants to Lender the right (in Borrower's name or otherwise and without affecting Borrower's obligations to Lender) during the continuance of an Event of Default to: (a) demand, receive, compromise, extend the time of payment of, or give discharge for, all Revenues; (b) endorse any checks or other instruments or orders in connection with the Revenues; and (c) file any claims or take such actions or institute such proceedings as Lender may deem necessary or advisable to protect Lender's interest. Borrower shall have no authority during the continuance of an Event of Default to, and will not, during such period of time without Lender's prior written consent, to accept collections, repossess, substitute or consent to the return of the Collateral or modify the terms or provisions of the documents.

Borrower agrees, upon the request of Lender, during the continuance of an Event of Default to: (i) notify all obligors under any lease or other documents of the interest of Lender or its assigns; and (ii) direct all obligors under the documents to pay all Revenues directly to Lender. Borrower further agrees to forward promptly to Lender all notices received by Borrower from any of the obligors under the documents. Borrower agrees and warrants that, if required by Lender: (i) all leases shall provide that obligors under the documents shall waive all rights to any defenses, set offs and counterclaims as against Lender; (ii) each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Collateral are subject and subordinate to all of the terms of this Agreement, including, without limitation Lender's right to possession of the Collateral after the occurrence of an Event of Default; (iii) there are and will be no purchase option or rights of third persons in or to the Collateral except as approved by Lender in writing; (iv) the Collateral is and will remain personal property; and (iv) the Collateral is and will be free from all liens and encumbrances other than Lender's.

Borrower further agrees that it will notify Lender upon of any material damage to or destruction of any of the Collateral. Borrower's chief executive office and principal place of business are located at the address set forth on the cover page and Borrower agrees to notify Lender promptly of any change of such address. Borrower shall cause each lessee of the Collateral to permit Lender to visit and inspect the Collateral on such lessee's premises or on any other premises where such lessee has control. Borrower warrants, represents and covenants that (a) Borrower's true and correct legal name is as set forth in the introductory paragraph of this Agreement and (b) Borrower will not do any of the following without prior written notice to Lender: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization. Upon request, Borrower will provide financial information in form and substance acceptable to Lender.

10. **Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.** All risk of loss of, damage to or destruction of the Collateral shall at all times be on Borrower. Borrower will procure forthwith and maintain fire and theft insurance (with an insurance provider reasonably satisfactory to Lender) with extended or combined additional coverage on the Collateral for the full insurable value thereof for the life of this Agreement plus such other insurance as Lender may specify, and promptly deliver each policy to Lender with a standard long form endorsement attached showing loss payable to Lender or assigns as respective interests may appear (the "**Insurance**"). Lender's acceptance of policies in lesser amounts of risks shall not be a waiver of Borrower's foregoing obligation. Borrower agrees that Lender may from time to time communicate directly with the insurer with respect to the Insurance. As additional security for the payment of the Obligations owing by Borrower under this Agreement, Borrower hereby grants to Lender a first priority security interest in the Insurance, all proceeds of the Insurance and all rights of Borrower with respect to the Insurance (including, without limitation, the right to cancel the Insurance

Borrower's Initials

DocuSign Envelope ID: 3DA64A13-8DA9-4D52-A984-959B355E009C



and all rights to Borrower relating to unearned premiums and dividends which may be payable on or in respect of the Insurance). Borrower represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Lender.

**11. Rights of Lender; Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender and any officer thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Borrower or in its name, from time to time in Lender's discretion, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing and in addition to any and all other rights and remedies available to Lender under this Agreement, applicable law or otherwise, Borrower hereby gives Lender the power and right, on behalf of Borrower, after an Event of Default, and without notice to or assent by Borrower, to do the following:

(a) to receive payment of, endorse, and receipt for, any and all monies, claims and other amounts due and to become due at any time in respect of or arising out of the Collateral;

(b) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect any of the Collateral and to enforce any other right in respect of the Collateral;

(c) to settle, compromise or adjust any suit, action or proceeding described above, and, in connection therewith, to give such discharges or releases as Lender may deem appropriate;

(d) to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation, to endorse Borrower's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation (with any such unearned insurance premium and dividends to be applied by Lender to the payment of the amounts owing by Borrower to Lender under this Agreement (and Borrower so directs that Lender make such application); and

(e) generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though Lender were the absolute owner thereof for all purposes, and to do, at Lender's option, at any time, or from time to time, all acts and things which Lender deems necessary to protect or preserve the Collateral and Lender's security interest and rights therein in order to effect the intent of this Agreement, all as fully and effectively as Borrower might do.

Borrower hereby ratifies all that such attorneys-in-fact may lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest, will be irrevocable and will terminate only upon payment in full of the Obligations and the termination of this Agreement. The powers conferred upon Lender hereunder are solely to protect Lender's interests in the Collateral and will not impose any duty upon it to exercise any such powers. Lender will have no obligation to preserve any rights of any third parties in the Collateral. Lender will be accountable only for amounts that it actually receives as a result of the exercise of such powers, and Borrower hereby releases Lender and all of its officers, directors, employees or agents will be responsible to Borrower for any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Borrower or any action taken or omitted to be taken in good faith or in reliance on the advice of counsel except for its own gross negligence or willful misconduct as determined by final and appealable judgment of a court with jurisdiction. Borrower acknowledges and agrees that any insurer may conclusively rely on the agreements made by Borrower in this Agreement and shall have no liability to Borrower for relying on this Agreement. Borrower acknowledges that the insurer shall not be required to determine whether an Event of Default exists under this Agreement in order to honor the foregoing power of attorney and the insurer may conclusively rely on any statement given by Lender in accordance herewith.

**12. Repayment by Lender.** If at any time all or any part of any payment or transfer of any kind received by Lender with respect to all or any part of this Agreement is repaid, set aside or invalidated by reason of any judgment, decree or order of any court or administrative body, or by reason of any agreement, settlement or compromise of any claim made at any time with respect to the repayment, recovery, setting aside or invalidation of all or any part of such payment or transfer, Borrower's obligations under this Agreement will continue (and/or be reinstated) and Borrower will be and remain liable, and will indemnify, defend and hold harmless Lender for, the amount or amounts so repaid, recovered, set aside or invalidated and all other claims, demands, liabilities, judgments, losses, damages, costs and expenses incurred in connection therewith. The provisions of this Section will be remain effective notwithstanding any contrary action which may have been taken by Borrower in reliance upon such payment or transfer, and any such contrary action so taken will be without prejudice to Lender's rights hereunder and will be deemed to have been conditioned upon such payment or transfer having become final and irrevocable. The provisions of this Section will survive any termination, cancellation or discharge of this Agreement.

**13. Indemnity; Other Rights of Lender.** Borrower agrees to indemnify, pay and hold (a) Lender, (b) Lender's officers, directors, employees, agents and affiliates and (c) their respective successors and assigns (collectively the "**Indemnitees**"), harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees and disbursements for any of such Indemnitees in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not any of such Indemnitees shall be designated a party thereto) that may be imposed on, incurred by, or asserted against any Indemnitee in any manner relating to or arising out of this Agreement or any other agreements executed and delivered by Borrower or any guarantor of the Obligations in connection herewith, the statements contained in any commitment or proposal letter delivered by Lender, Lender's agreement to make the Loan or the use or intended use of the proceeds of the Loan hereunder; provided that Borrower shall have no obligation to an Indemnitee hereunder with respect to such indemnification obligation arising from the gross negligence or willful misconduct of such Indemnitee. To the extent that the undertaking to indemnify, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, Borrower shall contribute the maximum portion that it is permitted to pay and satisfy under applicable law to the payment and satisfaction of any such indemnification obligation incurred by the Indemnitees or any of them. The provisions of the undertakings and indemnification set out in this Section shall survive satisfaction and payment of the Obligations and termination of this Agreement.

Lender may, with or without notice to any party and without affecting the obligations of any Borrower, surety, endorser, accommodation party or any other party to this Agreement, (i) renew, extend or otherwise postpone the time for payment of either principal of the Loan or interest thereon from time to time, (ii) release or discharge any one or more parties liable on this Agreement, (iii) suspend the right to enforce this Agreement with respect to any person(s), including any present or future guarantor of this Agreement, (iv) change, exchange or release any property securing this Agreement or suspend the right to enforce against any such property, and (v) at any time it deems it necessary or proper, call for and should it be made available, accept, as additional security, the signature(s) of such additional party or a security interest in property of any kind or description or both.

**14. Notices.** All notices, demands, requests, consents or approvals and other communications required or permitted hereunder will be in writing, and, to the extent required by applicable law, will comply with the requirements of the Uniform Commercial Code then in effect, and will be addressed to such party at the address set forth on the cover page or to such other address as any party may give to the other in writing for such purpose. All such communications, if personally delivered, will be conclusively deemed to have been received by a party hereto and to be effective when so delivered; if given by mail, on the fourth (4th) business day after

Borrower's Initials

DocuSign Envelope ID: 3DA64A13-8DA9-4D52-A884-959B355E909C


ACCOUNT NO
-005

such communication is deposited in the mail with first-class postage prepaid, return receipt requested; or if sent by overnight courier service, on the day after deposit thereof with such service; or if sent by certified or registered mail, on the third (3rd) business day after the day on which deposited in the mail.

15. **Miscellaneous.** (a) Borrower waives all exemptions. (b) Lender may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. (c) Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (d) Borrower acknowledges receipt of a true copy of this Agreement and waives acceptance hereof. (e) Borrower may not assign this Agreement in whole or in part without the prior written consent of Lender. Lender at any time may assign this Agreement in whole or in part. If more than one Borrower executes this Agreement, their obligations under this Agreement shall be joint and several. (f) From time to time, Lender may require an inspection and/or appraisal of the market value of the Collateral, which appraisal will be paid for by Borrower. Such appraisal will be in form and content satisfactory to Lender. (g) This is a continuing Agreement and will continue in effect even though any or all or any part of the Obligations have been paid in full and even though for a period of time Borrower may not be indebted to Lender. To the extent that Lender receives any payment on account of the Obligations, or any proceeds of the Collateral are applied on account of the Obligations, and any such payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid by Lender to Borrower, its estate, trustee, receiver or any other party under the United States Bankruptcy Code or any similar federal, state or local law, statute or regulation, then, to the extent of such payment or proceeds received, the Obligations shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender and applied on account of the Obligations. (h) The headings in this Agreement are for convenience only and will not limit or otherwise affect any of the terms hereof. (i) Lender will not be chargeable for any negligence, mistake, act or omission of any employee, accountant, examiner, agent or attorney employed by Lender (except for their willful misconduct as determined by a court with jurisdiction in a final order not subject to appeal) in making examinations, investigations or collections, or otherwise in administering the Loan or perfecting, maintaining, protecting or realizing upon any lien or security interest or any other interest in the Collateral or other security for the Obligations. (j) All representations, warranties, covenants and agreements made by Borrower herein will survive the execution and delivery of this Agreement. (k) This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed will be deemed to be an original and all of which taken together will constitute one and the same agreement. (l) Borrower agrees that this Agreement contains the entire agreement relating to the Loan and the Collateral and supersedes all previous contracts and agreements between Borrower and Lender relating to the Loan and the Collateral. (m) Any accounting terms used in this Agreement which are not specifically defined herein shall have the meanings customarily given them in accordance with generally accepted accounting principles set forth from time to time in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the U.S. accounting profession), which are applicable to the circumstances as of the date of determination. (n) As used herein, (i) "Borrower" also means "debtor" and includes heirs, executors, administrators, successors or assigns, and (ii) "Lender" as used in this Agreement also means "secured party" and includes successors or assigns. (o) Time shall be of the essence for this Agreement, including, without limitation, paying interest on the principal of the Loan.

16. **Usury Savings Clause.** It is the intent of the parties to comply with all applicable state and federal usury laws (now or hereafter enacted). Accordingly, notwithstanding any provision to the contrary in this Agreement, in no event (including, but not limited to, prepayment or acceleration of the maturity of any Obligation) shall this Agreement or any other related document require the payment or permit the collection of interest in excess of the Highest Lawful Rate. If under any circumstance whatsoever, any provision of this Agreement or of any other related document pertaining hereto or thereto shall provide for the payment or collection of interest in excess of the Highest Lawful Rate, then the obligation to be fulfilled shall be automatically reduced to the limit of such validity, and if from any such circumstances Lender shall ever receive anything of value as interest or deemed interest by applicable law under this Agreement or any other related document or otherwise any amount that would exceed the Highest Lawful Rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount of the Loan or any other Obligations, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of the Loan or any other Obligations, such excess shall be refunded to Borrower. In determining whether or not the interest paid or payable with respect to any Obligations under any specified contingency exceeds the Highest Lawful Rate, Borrower and Lender shall, to the maximum extent permitted under applicable law, (a) characterize any non-principal payment as an expense, fee or premium rather than as interest; (b) exclude voluntary prepayments and the effects thereof; (c) amortize, prorate, allocate and spread the total amount of interest throughout the entire contemplated term of the Obligations so that interest thereon does not exceed the maximum amount permitted by applicable law, and/or (d) allocate interest between portions of the Obligations, with the intent that no such portion shall bear interest at a rate greater than the Highest Lawful Rate. The right to accelerate the maturity of the Obligations does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or receive any unearned interest in the event of acceleration. In the event applicable law provides for an interest rate ceiling, that ceiling shall be the weekly ceiling or, if no weekly ceiling is provided for under applicable law, the ceiling shall be the ceiling that is closets in duration to a weekly ceiling.

17. **Governing Law.** This Agreement has been delivered, accepted at and will be deemed to have been made at Rolling Meadows, Illinois, and will be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Illinois without regard to principles of conflicts of law.

18. *Jurisdiction. Borrower hereby irrevocably agrees and submits to the exclusive jurisdiction of any state or federal court located within Cook County, Illinois; provided that nothing contained in this Agreement will prevent Lender from bringing any action, enforcing any award or judgment or exercising any rights against Borrower individually, against any security or against any property of Borrower within any other county, state, or other foreign or domestic jurisdiction. Borrower waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.*

19. *WAIVER OF JURY TRIAL. THE PARTIES HERETO EACH WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. BORROWER AND LENDER ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY. BORROWER ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE LOAN. BORROWER ACKNOWLEDGES THAT BORROWER HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE WAIVER OF JURY TRIAL, AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.*

[Remainder of page intentionally left blank.]



## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Wolters Kluwer Lien Solutions          800-331-3282

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Lien Solutions

P.O. Box 29071

Glendale, CA 91209-9071

USA

Alabama
Sec. Of State
B 20-7377777 FS
Date 06/26/2020
Time 12:41 PM
200626          1 Pg
File       $15.00
Access      $9.75
Conv        $4.50
Total      $29.25
8127348

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CWI ALABAMA, LLC | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | | AL | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Komatsu Financial Limited Partnership | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

4. This FINANCING STATEMENT covers the following collateral:    ☐ ATTACHMENT

ONE (1) Komatsu PC490LC-10 Hydraulic Excavator, S/N# A40251. ONE (1) Komatsu D61PX-23 Crawler Dozer, S/N# 31458. ONE (1) Komatsu D85PX-18 Crawler Dozer, S/N# 23107. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
AL-0-75650694-59343891

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**                    ACCOUNT NO. _____

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy the following described property ("property" or "equipment") on a contract time price basis set forth below. The contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY | Quote No. ▇▇▇ |
| | 5336 AIRPORT HWY | |
| | P.O. BOX 12326 | |
| | BIRMINGHAM, AL 35201 | |

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location    3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

County              FULTON
Telephone:          ▇▇▇▇▇▇▇

County:                        FULTON
State Charter Number:          ▇▇▇▇▇
State of Registration:         AL
Tax ID:                        ▇▇▇▇▇

### Property Description

| Make | Model | Type | Description | Serial No. | Price |
|------|-------|------|-------------|------------|-------|
| KOMATSU | HM400-5 | Articulated Truck | | 10282 | $325,000.00 |

### Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|------|------|-------|------|-------------|------------|-----------|-----------|-----------|
| | | | | | | $0.00 | $0.00 | $0.00 |
| 2010 | JOHN DEERE 250D | | Articulated Truck | | 657670 | $100,000.00 | $94,713.47 | $5,286.53 |

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $325,000.00 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $5,684.63 | |
| | | | | | 4. Cash Price (1+2+3) | | $330,684.63 |
| **Payments** | **Start Date** | **End Date** | **Payment** | **Total** | 5. a. Cash Down Payment | $12,000.00 | |
| 6 | 10/13/2020 | 03/13/2021 | $15,000.00 | $90,000.00 | b. Net Trade In | $5,286.53 | |
| 41 | 04/13/2021 | 08/13/2024 | $6,124.33 | $251,097.53 | c. Less Insurance | $0.00 | |
| 1 | 09/13/2024 | 09/13/2024 | $6,124.25 | $6,124.25 | Total Down Payment (5a+5b-5c) | | $17,286.53 |
| 48 | | | | $347,221.78 | 6. Net Cash Price (4-5) | | $313,398.10 |
| | | | | | 7. a. Lien & Filing Fees | $500.00 | |
| | | | | | b. Other Fees | $0.00 | |
| | | | | | Total Other Charges | | $500.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $313,898.10 |
| | | | | | 9. Finance Charge (5.85%) | | $33,323.76 |
| | | | | | 10. Total of Payments (8 + 9) | | $347,221.86 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $364,508.39 |

Date finance charge begins to accrue (if different than contract date)



Buyer's Initials _____

DocuSign Envelope ID: 7824F463-0AAD-4ED7-B752-3C10C6C2266A

## Tractor & Equipment Company ("Seller")

| SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT | ACCOUNT NO. |
|---|---|
| Insurance Coverage | Buyer Place of Business and Other Buyer Information |

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

Physical Damage Insurance Covering The Property Is Required.

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW.

Insurance Agency

,
Contact:
Phone#

IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.
Physical Location:

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

| Partner Names and Addresses (if applicable) | | |
|---|---|---|
| Name | Address | Tax ID |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein above granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if is contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge: (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: | CWI ALABAMA, LLC | Effective Contract Date: | 08/31/2020 |
|---|---|---|---|
| By: | *DocuSigned by:* [signature] 79DC1D32B8DE4E2... | Title: Manager | Tractor & Equipment Company |
| Co-Signer: | | Signature For Seller Approval: [signature] |
| By: | | Title: |

DocuSign Envelope ID: 7824F463-0AAD-4ED7-B752-3C10F5DE422C

## Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**          ACCOUNT NO. _____

**Assignment by Seller; Waiver of Defenses Against Assignee:** Seller may hold this contract or it may assign it for value to any entity. Such entity and any subsequent assignee shall be referred to herein as "Holder". Unless and until this contract is assigned, all rights hereunder given to Holder shall also be given to Seller. If Seller assigns this contract to Holder then after such assignment: a) Holder, as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Holder with the same force and effect as if Holder were an original party hereto; b) Seller shall not be Holder's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind Holder or affect any of Buyer's or Holder's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature it may have against Seller, including but not limited to defects in the Equipment, directly with Seller, and shall not assert any such claim, defense, set-off or counterclaim against Holder. Buyer acknowledges that it is not relying on any warranties, representations, or agreements unless stated in writing herein and that such matters omitted hereunder are not binding on Seller or Holder.

**Waiver of Defenses Acknowledgment; Place of Payment:** Buyer acknowledges that: Holder has no knowledge or information as to the condition or suitability for Buyer's purposes of the Equipment, and Holder's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Holder any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller. If this contract is assigned, then after assignment to KF, Buyer will make all payments directly to Holder at such places as Holder may from time to time designate in writing to Buyer.

**No Warranties:** THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO REPRESENTATAION IS MADE AS TO THE "YEAR MODEL", "MODEL YEAR" OR "YEAR OF MANUFACTURE" OF THE EQUIPMENT. Buyer acknowledges that it is not relying on any representation or agreement from Seller or Holder unless stated in writing herein and that matters not written herein are not binding on Seller or Holder, and that Holder's decision to purchase this contract from Seller will be made in reliance on the warranties and agreements made by Buyer.

**Buyer's Warranties and Representations:** Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby, the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the Equipment is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract are and shall be true, correct, valid and genuine; e) that Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding; f) that Buyer's location and organizational identification number (if applicable) as set forth on the first page of this document are true and correct; g) that Buyer's exact legal name is set forth on the first page of this document; and h) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**Buyer's Agreements:** Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the Equipment; b) to maintain the Equipment in good operating condition, repair, and appearance with qualified personnel in conformity with all governmental regulations; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the Equipment, showing the security interest of Holder thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Holder; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, without the prior written consent of Holder, and notwithstanding Holder's claim to proceeds, sell, rent, lend, encumber or transfer any of the Equipment; f) that Holder may enter upon Buyer's premises or wherever the Equipment may be located at any reasonable time to inspect the Equipment; g) that the Equipment is to be used only for commercial or business purposes; h) that Buyer will indemnify and hold Holder harmless from any breach by Buyer of every term of this agreement; and i) that Buyer will not change its organizational structure or location without the prior written consent of Holder.

**Insurance and Risk of Loss:** Liability insurance coverage for bodily and Equipment damage caused to others is NOT included herein. All risk of loss of, damage to or destruction of the Equipment shall at all times be on Buyer. Buyer shall keep the Equipment insured at Buyer's expense against loss or damage by fire, theft, and such risks as are customary for the Equipment's full insurable value with coverage and insurer being acceptable to Holder, with Holder being an additional insured and loss payee on the policy that provides that Holder's interest therein shall not be invalidated by the act, omissions, or neglect of anyone other than Holder and providing that insurer will give Holder thirty days advance written notice of any cancellation of the policy, whether such cancellation is at the direction of Buyer or insurer. Buyer shall promptly deliver a copy of each policy to Holder. If Buyer fails to so insure the Equipment, Holder may purchase such insurance, the cost of which Buyer shall immediately pay to Holder. Any purchase of insurance by Holder need not include liability or protection of Buyer's equity. Buyer irrevocably appoints Holder as Buyer's attorney-in-fact to make claim for, negotiate, settle, reserve payment of, and execute and endorse all documents, checks or drafts received in payment of loss or damage under any insurance.

Page 3 of 4          TEC524R          ORIGINAL FOR SELLER (IF ASSIGNED, FOR ASSIGNEE)          Buyer's Initials _____

## Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**                                      ACCOUNT NO. _____

**Events of Default; Acceleration:** The following are events of default which will allow Holder to exercise any and all of its right hereunder and that are available at law and in equity:

(a)   Buyer fails to make any payment due hereunder or under any other agreement with Seller or Holder on or before its due date;
(b)   Buyer breaches any warranty or provision hereof, or of any other instrument or agreement held by Seller or Holder;
(c)   any of the Equipment is lost, severely damaged, destroyed, or attached;
(d)   Buyer or any guarantor gives or has given Seller or Holder false information regarding its financial condition;
(e)   Buyer dies, becomes insolvent or ceases to do business in the ordinary course, or has a material change in its management;
(f)    a petition in bankruptcy is filed by or against Buyer or Buyer admits its inability to pay its debts as they come due or a Receiver is appointed for Buyer;
(g)   any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or Holder; or
(h)   whenever Holder in good faith believes the prospect of payment or performance is impaired or in good faith believes the Equipment is insecure;

If Buyer shall be in default hereunder or any other agreement with Holder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Holder shall so elect, with or without any notice to Buyer or any other entity, become immediately due and payable.

**Waiver of Defaults Not Binding:** Holder may in its sole discretion waive a default or allow a cure of default at Buyer's expense. Any such waiver or waivers in a particular instance or of a particular default shall not be a waiver of other defaults or a waiver of the same default or kind of default at another time. No modification or change in this contract shall bind Holder unless in writing executed by an officer of Holder.

**Holder's Remedies; Consent to Enter Premises:** Whenever Buyer is in default hereunder, Holder shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. Holder's rights and remedies shall be cumulative. If Buyer defaults Holder is entitled to do whatever the law allows to obtain for itself the benefit of the bargain under this contract. Consequently, Holder, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the Equipment is located and remove the Equipment or without removing the Equipment render any of the Equipment unusable and/or take possession of the Equipment without notice to anyone or without judicial process of any kind. Buyer will not hinder or delay Holder or its agent in any way and will, if requested, assist Holder or its agent in disassembling and/or removing the Equipment. Holder may require Buyer to assemble the Equipment and return it to Holder at a place to be designated by Holder. Buyer expressly waives all further rights to possession of the Equipment after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the Equipment to Buyer until all amounts secured hereby are fully paid in cash money. Holder may perform any of Buyer's obligations hereunder, and Buyer shall make Holder whole from such expense. Unless Buyer otherwise agrees in writing after default and unless the Equipment is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Holder will give Buyer reasonable notice of the time and place of any public sale of the Equipment or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Buyer shall be responsible for all expenses of retaking, holding, preparing for sale, selling and the like including reasonable attorneys' fees and other legal expenses associated with repossession and resale of the Equipment. Holder may bid at any sale. Buyer will remain fully liable for any deficiency despite any disposition of any collateral.

**Attorneys Fees:** Whenever Holder retains an attorney to enforce its right hereunder against Buyer or any guarantor either in court, out of court, or in arbitration, Buyer and any guarantors agree to pay to Holder reasonable attorneys fees and agree that not less than 25% of the amount due at the time of default shall constitute reasonable attorneys fees.

**Notice:** Any requirement of reasonable notice to Buyer or any guarantors shall be met if such notice is mailed postage prepaid, first class mail, to each person entitled to notice at Buyer's address shown herein at least ten calendar days before the time of sale or event in question.

**Miscellaneous:** Buyer waives all exemptions. Buyer hereby authorizes Holder to file financing statements describing the Equipment and/or a carbon or reproduction of this contract as financing statements. Holder may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Buyer waives acceptance hereof. The terms "Buyer", Holder, and "Seller" shall include heirs, executors, or administrators, successors or assigns to those parties. The obligations of multiple Buyers under this contract shall be joint and several. This contract shall be governed by the laws of the State of Alabama. Time is of the essence hereof.

**Entire Agreement:** This written document, which Buyer acknowledges it has read in its entirely, together with any written Riders hereto as may be executed by both Buyer and Seller, constitutes the entire agreement between the parties (and supersedes any prior agreement between the parties) concerning the Equipment. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted hereunder, but shall not invalidate the remaining provisions hereof. No oral agreement nor modification of this contract shall be binding unless included in a written document duly executed by both Buyer and an officer of Holder.

**Arbitration:** Any and all disputes, controversies, or claims arising between Holder (including the Seller) and Buyer and any guarantor, whether arising out of or relating to this Contract or otherwise, shall be resolved by mandatory binding arbitration except that Holder may bring a lawsuit in a judicial forum to repossess the Equipment or any collateral and/or to recover money judgment. The filing of such an action by Holder does not alter nor diminish the parties agreement that any other type of dispute still must be resolved through binding arbitration. This arbitration agreement is governed by the Federal Arbitration Act. All disputes of fact, procedure, and law – be the law statutory, administrative, case, or regulatory – and whether the matter is subject to arbitration shall be resolved by the arbitrator. The arbitrator may order any remedy that a court has the power to award. The award can be enforced in any court with competent jurisdiction. The arbitrator shall be selected jointly by the Buyer and Holder or Seller as the case may be. If they cannot agree on an arbitrator, they shall select a single arbitrator in accord with the commercial rules of the American Arbitration Association. Any arbitration involving Seller will be held in Birmingham, Alabama.

**Jury Waiver:** Seller, Holder, Buyer, and any guarantor hereby waive any right to trial by jury that any of them may have in any action between or among any of them that is not subject to arbitration. The arbitration and jury waiver provisions shall survive any assignment hereof and shall continue to bind the parties hereto in any dispute subsequent to assignment between Seller and Buyer or any guarantor.

**KOMATSU
FINANCIAL**

# SELLER'S ASSIGNMENT

TO:      KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:      Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"), dated 08/31/2020 having a present unpaid balance of $347,221.78 covering HM400-5S/N 10282 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY
(Assignor)

Sign:

08/31/2020
(executed)

**Name: Greg Madaris**

**Title: Sales Administration Manager**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

Wolters Kluwer Lien Solutions          800-331-3282

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Lien Solutions

P.O. Box 29071

Glendale, CA 91209-9071

USA

Alabama
Sec. Of State
B 20-763339 FS
Date 08/28/2020
Time 06:27 PM
200828    1 Pg
File    $15.00
Access    $9.75
Conv    $4.50
Total    $29.25
8183622

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CWI ALABAMA, LLC | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|
| | | AL | | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Komatsu Financial Limited Partnership | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

**4.** This FINANCING STATEMENT covers the following collateral:          ☐ ATTACHMENT

ONE (1) KOMATSU HM400-5 Articulated Truck, S/N# 10282. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| **6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8.** OPTIONAL FILER REFERENCE DATA

AL-0-76516170-59712601

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO. _____

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, or a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy the following described property ("property" or "equipment") on a contract time price basis set forth below. The contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY | Quote No. ▓▓ |
|---|---|---|
| | 5336 AIRPORT HWY | |
| | P.O. BOX 12326 | |
| | BIRMINGHAM, AL 35201 | |

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location: 3284 NORTHSIDE PARKWAY, SUITE 600, GA 30327

| County | FULTON | County: | FULTON |
|---|---|---|---|
| Telephone: ▓▓ | | State Charter Number: | |
| | | State of Registration: | AL |
| | | Tax ID: ▓▓ | |

### Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| KOMATSU | WA270-8 | Wheel Loader | | A29061 | $187,600.00 |

### Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### Schedule of Payments

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 53 | 08/12/2020 | 12/12/2024 | $3,572.36 | $189,335.08 |
| 1 | 01/12/2025 | 01/12/2025 | $3,572.17 | $3,572.17 |
| 54 | | | | $192,907.25 |

### Statement of Transaction

| | | |
|---|---|---|
| 1. Sales Price | | $187,600.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $4,807.25 | |
| 4. Cash Price (1+2+3) | | $192,407.25 |
| 5. a. Cash Down Payment | $0.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $0.00 |
| 6. Net Cash Price (4-5) | | $192,407.25 |
| 7. a. Lien & Filing Fees | $500.00 | |
| b. Other Fees | $0.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $192,907.25 |
| 9. Finance Charge (0.00%) | | $0.00 |
| 10. Total of Payments (8 + 9) | | $192,907.25 |
| 11. Total Time Price (4 + 7 + 9) | | $192,907.25 |

Date finance charge begins to accrue (if different than contract date)

Buyer's initials 

## Tractor & Equipment Company ("Seller")

| SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT | ACCOUNT NO. |
|---|---|
| Insurance Coverage | Buyer Place of Business and Other Buyer Information |

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

Physical Damage Insurance Covering The Property Is Required.

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW.
Insurance Agency

,
Contact:
Phone#

IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.
Physical Location:

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

| Partner Names and Addresses (if applicable) | | |
|---|---|---|
| Name | Address | Tax ID |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein above granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| Buyer: CWI ALABAMA, LLC | Effective Contract Date: 06/30/2020 |
|---|---|
| By: _____ Title Manager | Tractor & Equipment Company |
| Co-Signer: | Signature For Seller Approval: |
| By: Title: | |

# Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**                    ACCOUNT NO. _____

**Assignment by Seller; Waiver of Defenses Against Assignee:** Seller may hold this contract or it may assign it for value to any entity. Such entity and any subsequent assignee shall be referred to herein as "Holder". Unless and until this contract is assigned, all rights hereunder given to Holder shall also be given to Seller. If Seller assigns this contract to Holder then after such assignment: a) Holder, as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Holder with the same force and effect as if Holder were an original party hereto; b) Seller shall not be Holder's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind Holder or affect any of Buyer's or Holder's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature it may have against Seller, including but not limited to defects in the Equipment, directly with Seller, and shall not assert any such claim, defense, set-off or counterclaim against Holder. Buyer acknowledges that it is not relying on any warranties, representations, or agreements unless stated in writing herein and that such matters omitted hereunder are not binding on Seller or Holder.

**Waiver of Defenses Acknowledgment; Place of Payment:** Buyer acknowledges that: Holder has no knowledge or information as to the condition or suitability for Buyer's purposes of the Equipment, and Holder's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Holder any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller. If this contract is assigned, then after assignment to KF, Buyer will make all payments directly to Holder at such places as Holder may from time to time designate in writing to Buyer.

**No Warranties:** THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO REPRESENTATAION IS MADE AS TO THE "YEAR MODEL", "MODEL YEAR" OR "YEAR OF MANUFACTURE" OF THE EQUIPMENT. Buyer acknowledges that it is not relying on any representation or agreement from Seller or Holder unless stated in writing herein and that matters not written herein are not binding on Seller or Holder, and that Holder's decision to purchase this contract from Seller will be made in reliance on the warranties and agreements made by Buyer.

**Buyer's Warranties and Representations:** Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby, the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the Equipment is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract are and shall be true, correct, valid and genuine; e) that Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding; f) that Buyer's location and organizational identification number (if applicable) as set forth on the first page of this document are true and correct; g) that Buyer's exact legal name is set forth on the first page of this document; and h) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**Buyer's Agreements:** Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the Equipment; b) to maintain the Equipment in good operating condition, repair, and appearance with qualified personnel in conformity with all governmental regulations; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the Equipment, showing the security interest of Holder thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Holder; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, without the prior written consent of Holder, and notwithstanding Holder's claim to proceeds, sell, rent, lend, encumber or transfer any of the Equipment; f) that Holder may enter upon Buyer's premises or wherever the Equipment may be located at any reasonable time to inspect the Equipment; g) that the Equipment is to be used only for commercial or business purposes; h) that Buyer will indemnify and hold Holder harmless from any breach by Buyer of every term of this agreement; and i) that Buyer will not change its organizational structure or location without the prior written consent of Holder.

**Insurance and Risk of Loss:** Liability insurance coverage for bodily and Equipment damage caused to others is NOT included herein. All risk of loss of, damage to or destruction of the Equipment shall at all times be on Buyer. Buyer shall keep the Equipment insured at Buyer's expense against loss or damage by fire, theft, and such risks as are customary for the Equipment's full insurable value with coverage and insurer being acceptable to Holder, with Holder being an additional insured and loss payee on the policy that provides that Holder's interest therein shall not be invalidated by the act, omissions, or neglect of anyone other than Holder and providing that insurer will give Holder thirty days advance written notice of any cancellation of the policy, whether such cancellation is at the direction of Buyer or insurer. Buyer shall promptly deliver a copy of each policy to Holder. If Buyer fails to so insure the Equipment, Holder may purchase such insurance, the cost of which Buyer shall immediately pay to Holder. Any purchase of insurance by Holder need not include liability or protection of Buyer's equity. Buyer irrevocably appoints Holder as Buyer's attorney-in-fact to make claim for, negotiate, settle, reserve payment of, and execute and endorse all documents, checks or drafts received in payment of loss or damage under any insurance.

# Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**                    ACCOUNT NO. _____

**Events of Default; Acceleration:** The following are events of default which will allow Holder to exercise any and all of its right hereunder and that are available at law and in equity:

(a)  Buyer fails to make any payment due hereunder or under any other agreement with Seller or Holder on or before its due date;
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement held by Seller or Holder;
(c)  any of the Equipment is lost, severely damaged, destroyed, or attached;
(d)  Buyer or any guarantor gives or has given Seller or Holder false information regarding its financial condition;
(e)  Buyer dies, becomes insolvent or ceases to do business in the ordinary course, or has a material change in its management;
(f)  a petition in bankruptcy is filed by or against Buyer or Buyer admits its inability to pay its debts as they come due or a Receiver is appointed for Buyer;
(g)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or Holder; or
(h)  whenever Holder in good faith believes the prospect of payment or performance is impaired or in good faith believes the Equipment is insecure;

If Buyer shall be in default hereunder or any other agreement with Holder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Holder shall so elect, with or without any notice to Buyer or any other entity, become immediately due and payable.

**Waiver of Defaults Not Binding:** Holder may in its sole discretion waive a default or allow a cure of default at Buyer's expense. Any such waiver or waivers in a particular instance or of a particular default shall not be a waiver of other defaults or a waiver of the same default or kind of default at another time. No modification or change in this contract shall bind Holder unless in writing executed by an officer of Holder.

**Holder's Remedies; Consent to Enter Premises:** Whenever Buyer is in default hereunder, Holder shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. Holder's rights and remedies shall be cumulative. If Buyer defaults Holder is entitled to do whatever the law allows to obtain for itself the benefit of the bargain under this contract. Consequently, Holder, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the Equipment is located and remove the Equipment or without removing the Equipment render any of the Equipment unusable and/or take possession of the Equipment without notice to anyone or without judicial process of any kind. Buyer will not hinder or delay Holder or its agent in any way and will, if requested, assist Holder or its agent in disassembling and/or removing the Equipment. Holder may require Buyer to assemble the Equipment and return it to Holder at a place to be designated by Holder. Buyer expressly waives all further rights to possession of the Equipment after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the Equipment to Buyer until all amounts secured hereby are fully paid in cash money. Holder may perform any of Buyer's obligations hereunder, and Buyer shall make Holder whole from such expense. Unless Buyer otherwise agrees in writing after default and unless the Equipment is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Holder will give Buyer reasonable notice of the time and place of any public sale of the Equipment or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Buyer shall be responsible for all expenses of retaking, holding, preparing for sale, selling and the like including reasonable attorneys' fees and other legal expenses associated with repossession and resale of the Equipment. Holder may bid at any sale. Buyer will remain fully liable for any deficiency despite any disposition of any collateral.

**Attorneys Fees:** Whenever Holder retains an attorney to enforce its right hereunder against Buyer or any guarantor either in court, out of court, or in arbitration, Buyer and any guarantors agree to pay to Holder reasonable attorneys fees and agree that not less than 25% of the amount due at the time of default shall constitute reasonable attorneys fees.

**Notice:** Any requirement of reasonable notice to Buyer or any guarantors shall be met if such notice is mailed postage prepaid, first class mail, to each person entitled to notice at Buyer's address shown herein at least ten calendar days before the time of sale or event in question.

**Miscellaneous:** Buyer waives all exemptions. Buyer hereby authorizes Holder to file financing statements describing the Equipment and/or a carbon or reproduction of this contract as financing statements. Holder may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Buyer waives acceptance hereof. The terms "Buyer", Holder, and "Seller" shall include heirs, executors, or administrators, successors or assigns to those parties. The obligations of multiple Buyers under this contract shall be joint and several. This contract shall be governed by the laws of the State of Alabama. Time is of the essence hereof.

**Entire Agreement:** This written document, which Buyer acknowledges it has read in its entirely, together with any written Riders hereto as may be executed by both Buyer and Seller, constitutes the entire agreement between the parties (and supersedes any prior agreement between the parties) concerning the Equipment. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted hereunder, but shall not invalidate the remaining provisions hereof. No oral agreement nor modification of this contract shall be binding unless included in a written document duly executed by both Buyer and an officer of Holder.

**Arbitration:** Any and all disputes, controversies, or claims arising between Holder (including the Seller) and Buyer and any guarantor, whether arising out of or relating to this Contract or otherwise, shall be resolved by mandatory binding arbitration except that Holder may bring a lawsuit in a judicial forum to repossess the Equipment or any collateral and/or to recover money judgment. The filing of such an action by Holder does not alter nor diminish the parties agreement that any other type of dispute still must be resolved through binding arbitration. This arbitration agreement is governed by the Federal Arbitration Act. All disputes of fact, procedure, and law – be the law statutory, administrative, case, or regulatory – and whether the matter is subject to arbitration shall be resolved by the arbitrator. The arbitrator may order any remedy that a court has the power to award. The award can be enforced in any court with competent jurisdiction. The arbitrator shall be selected jointly by the Buyer and Holder or Seller as the case may be. If they cannot agree on an arbitrator, they shall select a single arbitrator in accord with the commercial rules of the American Arbitration Association. Any arbitration involving Seller will be held in Birmingham, Alabama.

**Jury Waiver:** Seller, Holder, Buyer, and any guarantor hereby waive any right to trial by jury that any of them may have in any action between or among any of them that is not subject to arbitration. The arbitration and jury waiver provisions shall survive any assignment hereof and shall continue to bind the parties hereto in any dispute subsequent to assignment between Seller and Buyer or any guarantor.

Buyer's Initials _____

**KOMATSU
FINANCIAL**

## SELLER'S ASSIGNMENT

TO:    KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:    Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"), dated 06/30/2020 having a present unpaid balance of $192,907.25 covering WA270-8S/N A29061 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

**[X] 1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

**[ ] 2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

**[ ] 3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

**[ ] 4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY

(Assignor)

Sign: _____

06/30/2020
(executed)

**Name: Greg Madaris**

**Title: Sales Administration Manager**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R

# Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**                     ACCOUNT NO. _____

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy the following described property ("property" or "equipment") on a contract time price basis set forth below. The contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY<br>5336 AIRPORT HWY<br>P.O. BOX 12326<br>BIRMINGHAM, AL 35201 | | Quote No: |
|---|---|---|---|

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location:  3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

| County | FULTON | | County: | FULTON |
|---|---|---|---|---|
| Telephone: | | | State Charter Number: | AL |
| | | | State of Registration: | |
| | | | Tax ID: | |

**Property Description**

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| KOMATSU | D61PXI-24 | Crawler Dozer | | B60660 | $210,000.00 |

**Trade-In Description**

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $210,000.00 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $3,345.45 | |
| | | | | | 4. Cash Price (1+2+3) | | $213,345.45 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $57,100.00 | |
| 48 | 11/12/2021 | 10/12/2025 | $3,399.93 | $163,196.64 | b. Net Trade In | $0.00 | |
| 48 | | | | $163,196.64 | c. Less Insurance | $0.00 | |
| | | | | | Total Down Payment (5a+5b-5c) | | $57,100.00 |
| | | | | | 6. Net Cash Price (4-5) | | $156,245.45 |
| | | | | | 7. a. Lien & Filing Fees | $500.00 | |
| | | | | | b. Other Fees | $0.00 | |
| | | | | | Total Other Charges | | $500.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $156,745.45 |
| | | | | | 9. Finance Charge (1.99%) | | $6,451.19 |
| | | | | | 10. Total of Payments (8 + 9) | | $163,196.64 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $220,296.64 |

Date finance charge begins to accrue (if different than contract date)

## Tractor & Equipment Company ("Seller")

| SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT | ACCOUNT NO. |
|---|---|
| Insurance Coverage | Buyer Place of Business and Other Buyer Information |

| | |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW. | |
| Insurance Agency | |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| , | |
| Contact: | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE |
| Phone# | SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

| Partner Names and Addresses (if applicable) | | |
|---|---|---|
| Name | Address | Tax ID |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein above granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if is contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge: (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: | CWI ALABAMA, LLC | | Effective Contract Date: | 09/30/2021 |
|---|---|---|---|---|
| By: | DocuSigned by: | Title Manager | **Tractor & Equipment Company** | |
| Co-Signer: | 79DC1D3288DE4E2... | | Signature For Seller Approval: | |
| By: | | Title: | | |

## Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO. _____

**Assignment by Seller; Waiver of Defenses Against Assignee:**Seller may hold this contract or it may assign it for value to any entity. Such entity and any subsequent assignee shall be referred to herein as "Holder". Unless and until this contract is assigned, all rights hereunder given to Holder shall also be given to Seller. If Seller assigns this contract to Holder then after such assignment: a) Holder, as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Holder with the same force and effect as if Holder were an original party hereto; b) Seller shall not be Holder's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind Holder or affect any of Buyer's or Holder's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature it may have against Seller, including but not limited to defects in the Equipment, directly with Seller, and shall not assert any such claim, defense, set-off or counterclaim against Holder. Buyer acknowledges that it is not relying on any warranties, representations, or agreements unless stated in writing herein and that such matters omitted hereunder are not binding on Seller or Holder.

**Waiver of Defenses Acknowledgment; Place of Payment:**Buyer acknowledges that: Holder has no knowledge or information as to the condition or suitability for Buyer's purposes of the Equipment, and Holder's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Holder any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller. If this contract is assigned, then after assignment to KF, Buyer will make all payments directly to Holder at such places as Holder may from time to time designate in writing to Buyer.

**No Warranties:**THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO REPRESENTATAION IS MADE AS TO THE "YEAR MODEL", "MODEL YEAR" OR "YEAR OF MANUFACTURE" OF THE EQUIPMENT. Buyer acknowledges that it is not relying on any representation or agreement from Seller or Holder unless stated in writing herein and that matters not written herein are not binding on Seller or Holder, and that Holder's decision to purchase this contract from Seller will be made in reliance on the warranties and agreements made by Buyer.

**Buyer's Warranties and Representations:**Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby, the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the Equipment is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract are and shall be true, correct, valid and genuine; e) that Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding; f) that Buyer's location and organizational identification number (if applicable) as set forth on the first page of this document are true and correct; g) that Buyer's exact legal name is set forth on the first page of this document; and h) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**Buyer's Agreements:**Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the Equipment; b) to maintain the Equipment in good operating condition, repair, and appearance with qualified personnel in conformity with all governmental regulations; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the Equipment, showing the security interest of Holder thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Holder; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, without the prior written consent of Holder, and notwithstanding Holder's claim to proceeds, sell, rent, lend, encumber or transfer any of the Equipment; f) that Holder may enter upon Buyer's premises or wherever the Equipment may be located at any reasonable time to inspect the Equipment; g) that the Equipment is to be used only for commercial or business purposes; h) that Buyer will indemnify and hold Holder harmless from any breach by Buyer of every term of this agreement; and i) that Buyer will not change its organizational structure or location without the prior written consent of Holder.

**Insurance and Risk of Loss:**Liability insurance coverage for bodily and Equipment damage caused to others is NOT included herein. All risk of loss of, damage to or destruction of the Equipment shall at all times be on Buyer. Buyer shall keep the Equipment insured at Buyer's expense against loss or damage by fire, theft, and such risks as are customary for the Equipment's full insurable value with coverage and insurer being acceptable to Holder, with Holder being an additional insured and loss payee on the policy that provides that Holder's interest therein shall not be invalidated by the act, omissions, or neglect of anyone other than Holder and providing that insurer will give Holder thirty days advance written notice of any cancellation of the policy, whether such cancellation is at the direction of Buyer or insurer. Buyer shall promptly deliver a copy of each policy to Holder. If Buyer fails to so insure the Equipment, Holder may purchase such insurance, the cost of which Buyer shall immediately pay to Holder. Any purchase of insurance by Holder need not include liability or protection of Buyer's equity. Buyer irrevocably appoints Holder as Buyer's attorney-in-fact to make claim for, negotiate, settle, reserve payment of, and execute and endorse all documents, checks or drafts received in payment of loss or damage under any insurance.

## Tractor & Equipment Company ("Seller")

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO. _____

**Events of Default; Acceleration:**The following are events of default which will allow Holder to exercise any and all of its right hereunder and that are available at law and in equity:

(a) Buyer fails to make any payment due hereunder or under any other agreement with Seller or Holder on or before its due date;
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement held by Seller or Holder;
(c) any of the Equipment is lost, severely damaged, destroyed, or attached;
(d) Buyer or any guarantor gives or has given Seller or Holder false information regarding its financial condition;
(e) Buyer dies, becomes insolvent or ceases to do business in the ordinary course, or has a material change in its management;
(f) a petition in bankruptcy is filed by or against Buyer or Buyer admits its inability to pay its debts as they come due or a Receiver is appointed for Buyer;
(g) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or Holder; or
(h) whenever Holder in good faith believes the prospect of payment or performance is impaired or in good faith believes the Equipment is insecure;

If Buyer shall be in default hereunder or any other agreement with Holder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Holder shall so elect, with or without any notice to Buyer or any other entity, become immediately due and payable.

**Waiver of Defaults Not Binding:**Holder may in its sole discretion waive a default or allow a cure of default at Buyer's expense. Any such waiver or waivers in a particular instance or of a particular default shall not be a waiver of other defaults or a waiver of the same default or kind of default at another time. No modification or change in this contract shall bind Holder unless in writing executed by an officer of Holder.

**Holder's Remedies; Consent to Enter Premises:**Whenever Buyer is in default hereunder, Holder shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. Holder's rights and remedies shall be cumulative. If Buyer defaults Holder is entitled to do whatever the law allows to obtain for itself the benefit of the bargain under this contract. Consequently, Holder, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the Equipment is located and remove the Equipment or without removing the Equipment render any of the Equipment unusable and/or take possession of the Equipment without notice to anyone or without judicial process of any kind. Buyer will not hinder or delay Holder or its agent in any way and will, if requested, assist Holder or its agent in disassembling and/or removing the Equipment. Holder may require Buyer to assemble the Equipment and return it to Holder at a place to be designated by Holder. Buyer expressly waives all further rights to possession of the Equipment after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the Equipment to Buyer until all amounts secured hereby are fully paid in cash money. Holder may perform any of Buyer's obligations hereunder, and Buyer shall make Holder whole from such expense. Unless Buyer otherwise agrees in writing after default and unless the Equipment is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Holder will give Buyer reasonable notice of the time and place of any public sale of the Equipment or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Buyer shall be responsible for all expenses of retaking, holding, preparing for sale, selling and the like including reasonable attorneys' fees and other legal expenses associated with repossession and resale of the Equipment. Holder may bid at any sale. Buyer will remain fully liable for any deficiency despite any disposition of any collateral.

**Attorneys Fees:**Whenever Holder retains an attorney to enforce its right hereunder against Buyer or any guarantor either in court, out of court, or in arbitration, Buyer and any guarantors agree to pay to Holder reasonable attorneys fees and agree that not less than 25% of the amount due at the time of default shall constitute reasonable attorneys fees.

**Notice:** Any requirement of reasonable notice to Buyer or any guarantors shall be met if such notice is mailed postage prepaid, first class mail, to each person entitled to notice at Buyer's address shown herein at least ten calendar days before the time of sale or event in question.

**Miscellaneous:**Buyer waives all exemptions. Buyer hereby authorizes Holder to file financing statements describing the Equipment and/or a carbon or reproduction of this contract as financing statements. Holder may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Buyer waives acceptance hereof. The terms "Buyer", Holder, and "Seller" shall include heirs, executors, or administrators, successors or assigns to those parties. The obligations of multiple Buyers under this contract shall be joint and several. This contract shall be governed by the laws of the State of Alabama. Time is of the essence hereof.

**Entire Agreement:** This written document, which Buyer acknowledges it has read in its entirely, together with any written Riders hereto as may be executed by both Buyer and Seller, constitutes the entire agreement between the parties (and supersedes any prior agreement between the parties) concerning the Equipment. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted hereunder, but shall not invalidate the remaining provisions hereof. No oral agreement nor modification of this contract shall be binding unless included in a written document duly executed by both Buyer and an officer of Holder.

**Arbitration:** Any and all disputes, controversies, or claims arising between Holder (including the Seller) and Buyer and any guarantor, whether arising out of or relating to this Contract or otherwise, shall be resolved by mandatory binding arbitration except that Holder may bring a lawsuit in a judicial forum to repossess the Equipment or any collateral and/or to recover money judgment. The filing of such an action by Holder does not alter nor diminish the parties agreement that any other type of dispute still must be resolved through binding arbitration. This arbitration agreement is governed by the Federal Arbitration Act. All disputes of fact, procedure, and law – be the law statutory, administrative, case, or regulatory – and whether the matter is subject to arbitration shall be resolved by the arbitrator. The arbitrator may order any remedy that a court has the power to award. The award can be enforced in any court with competent jurisdiction. The arbitrator shall be selected jointly by the Buyer and Holder or Seller as the case may be. If they cannot agree on an arbitrator, they shall select a single arbitrator in accord with the commercial rules of the American Arbitration Association. Any arbitration involving Seller will be held in Birmingham, Alabama.

**Jury Waiver:** Seller, Holder, Buyer, and any guarantor hereby waive any right to trial by jury that any of them may have in any action between or among any of them that is not subject to arbitration. The arbitration and jury waiver provisions shall survive any assignment hereof and shall continue to bind the parties hereto in any dispute subsequent to assignment between Seller and Buyer or any guarantor.

TEC524R  ORIGINAL FOR SELLER (IF ASSIGNED, FOR ASSIGNEE)  Buyer's Initials _____

**KOMATSU** SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"), dated 09/30/2021 having a present unpaid balance of $163,196.64 covering D61PXI-24 S/N B60660 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

☒ **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

☐ **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

☐ **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

☐ **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY
_____ (Assignor)

Sign: _____
09/30/2021
(executed)

**Name: Greg Madaris**

**Title: Sales Administration Manager**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Wolters Kluwer Lien Solutions          800-331-3282

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Lien Solutions

P.O. Box 29071

Glendale, CA 91209-9071
USA

Alabama
Sec. Of State
B 21-7579455 FS
Date 09/27/2021
Time 04:58 PM
210927    1 Pg
File          $15.00
Access        $9.75
Conv          $4.50
Total        $29.25
8405244

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |
|---|
| CWI ALABAMA, LLC |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|
| | | AL | | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
|---|
| |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
|---|
| Komatsu Financial Limited Partnership |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

**4.** This FINANCING STATEMENT covers the following collateral: ☐ ATTACHMENT

ONE (1) KOMATSU D61PXI-24 Crawler Dozer, S/N# B60660. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

**8.** OPTIONAL FILER REFERENCE DATA
AL-0-82646725-62256713

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# KOMATSU  PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

Subject to the terms and conditions herein contained, the Seller hereby agrees to sell to the Buyer the repairs, parts, components and services described below and the Buyer, having been quoted and offered both a cash sale price and a contract time price, hereby agrees to purchase from the Seller such repairs, parts, components and services on a contract time price basis set forth below. The property described in Table A below (the "Property" which is being repaired and/or serviced) is to be used only for commercial or business purposes, includes all accessories and attachments thereto, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY 5336 AIRPORT HWY BIRMINGHAM, AL 35201 | | Quote No. |
|---|---|---|---|

**Buyer's Information**
CWI ENTERPRISES, LLC

3284 NORTHSIDE PARKWAY NW, SUITE 600
ATLANTA, GA 30327

Physical Location

3284 NORTHSIDE PARKWAY NW, SUITE 600
ATLANTA, GA 30327

County      FULTON
Telephone:

County:
State Charter Number:
State of Registration:
Tax ID:

FULTON

GA

### Table A: Equipment to be Repaired/Serviced

| Make | Model | Type | Serial No. |
|---|---|---|---|
| Komatsu | D61PX-23 | Crawler Dozer | 31458 |
| Komatsu | PC490LC-10 | Hydraulic Excavator | A40251 |
| Komatsu | D85PX-18 | Crawler Dozer | 23107 |
| Komatsu | HM400-5 | Articulated Truck | 10282 |

Table B: Description of repairs and services to be done on the equipment in Table A above and parts/components to be added thereto (show all serial numbers and engine numbers).

Insurance: If an amount is included in item 5c of this page, such amount is for physical damage, theft and fire insurance

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $55,721.60 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $0.00 | |
| | | | | | 4. Cash Price (1+2+3) | | $55,721.60 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $0.00 | |
| 11 | 10/12/2022 | 08/12/2023 | $4,643.47 | $51,078.17 | b. Net Trade In | $0.00 | |
| 1 | 09/12/2023 | 09/12/2023 | $4,643.43 | $4,643.43 | c. Less Insurance | $0.00 | |
| 12 | | | | $55,721.60 | Total Down Payment (5a+5b-5c) | | $0.00 |
| | | | | | 6. Net Cash Price (4-5) | | $55,721.60 |
| | | | | | 7. a. Lien & Filing Fees | $0.00 | |
| | | | | | b. Other Fees | $0.00 | |
| | | | | | Total Other Charges | | $0.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $55,721.60 |
| | | | | | 9. Finance Charge (0.00%) | | $0.00 |
| | | | | | 10. Total of Payments (8 + 9) | | $55,721.60 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $55,721.60 |

Date finance charge begins to accrue (if different than contract date)

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials _____  SEW

**KOMATSU FINANCIAL**    PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a security interest under the Uniform Commercial Code in and to (i) the property sold hereunder and described on page one in Table B and (ii) the property described on page one in Table A, in each instance, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds thereof, including amounts payable under any insurance policies with respect thereto (collectively together with any Additional Collateral (as hereinafter defined), the "Collateral"). Buyer hereby authorizes Seller to file one or more financing statements covering any or all of the Collateral and/or a carbon or reproduction of this contract as a financing statement.

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON PAGES 3 THROUGH 5 hereof, which Buyer has read and to which Buyer agrees, contains the entire agreement relating to the conditional sale of the repairs, parts, components and services described in Table B (on page one) above and supercedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the repairs, parts, components and services described in Table B on page one. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer:    CWI ENTERPRISES, LLC | Effective Contract Date:    08/31/2022 |
|---|---|
| By:    *Stephen E. Witmer*    Title    Manager | Salesman's Signature: |
| Co-Signer: | Signature For Seller Approval: |
| By:    Title: | |

KF524S (03/13)
Page 2 of 5

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

*SEW*
Buyer's Initials _____

# KOMATSU FINANCIAL   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

**Conditional Terms and Conditions:**

### 1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). if Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

### 2. Waiver of Defenses Acknowledgment; Place of Payment:

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

### 3. Buyer's Warranties and Representations:

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

### 4. Events of Default; Acceleration:

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)  any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)  Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)  it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)  any of the property is lost or destroyed;
(f)  a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)  property of Buyer be attached or a receiver be appointed for Buyer;
(h)  whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials ___*SEW*___

# KOMATSU PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

### 5. Seller's Remedies After Default; Consent to Enter Premises:

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

### 6. Waiver of Defaults; Exclusive Agreement:

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

## No oral agreement shall be binding.

### 7. Buyer's Agreements:

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials _____ *SEW*

# KOMATSU FINANCIAL

## PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

## 8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.

All risk of loss, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

## 9. Miscellaneous:

Buyer waive all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

**KOMATSU**  **SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO. _____

TO:  KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:  Security Agreement/Contract between CWI ENTERPRISES, LLC ("Buyer") and undersigned ("Assignor"), dated 08/31/2022 having a present unpaid balance of $55,721.60 covering D61PX-23 S/N 31458 PC490LC-10 S/N A40251 D85PX-18 S/N 23107 HM400-5 S/N 10282 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X]  **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ]  **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ]  **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ]  **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY
(Assignor)

Sign: _____
08/31/2022
(executed)

**Name: Greg Madaris** _____

**Title: Sales Administration Manager** _____

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R

Page 1 of 1

FILED & RECORDED
Tuesday, September 6, 2022 2:43:49 PM
File Number: 007-2022-053677
Janie J. Jones
Barrow County Clerk of Superior Court

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    11323 - KOMATSU

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

88571718

GAGA

File with: Barrow, GA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CWI ENTERPRISES, LLC | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3284 NORTHSIDE PARKWAY NW | ATLANTA | GA | 30327 | USA |

2. **DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Komatsu Financial Limited Partnership | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
ONE (1) Komatsu D61PX-23 Crawler Dozer, S/N# 31458. ONE (1) Komatsu PC490LC-10 Hydraulic Excavator, S/N# A40251. ONE (1) Komatsu D85PX-18 Crawler Dozer, S/N# 23107. ONE (1) Komatsu HM400-5 Articulated Truck, S/N# 10282. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check **only** if applicable and check **only** one box:      6b. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien   ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
88571718      New Filing (Rapport)      31458

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**KOMATSU** **PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**
**FINANCIAL**

ACCOUNT NO._____

Subject to the terms and conditions herein contained, the Seller hereby agrees to sell to the Buyer the repairs, parts, components and services described below and the Buyer, having been quoted and offered both a cash sale price and a contract time price, hereby agrees to purchase from the Seller such repairs, parts, components and services on a contract time price basis set forth below. The property described in Table A below (the "Property" which is being repaired and/or serviced) is to be used only for commercial or business purposes, includes all accessories and attachments thereto, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY<br>5336 AIRPORT HWY<br>BIRMINGHAM, AL 35201 | Quote No. |
|---|---|---|

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location: 3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

County: FULTON
Telephone:

County: FULTON
State Charter Number:
State of Registration: AL
Tax ID: 

**Table A: Equipment to be Repaired/Serviced**

| Make | Model | Type | Serial No. |
|---|---|---|---|
| Komatsu | D61PX-23 | Crawler Dozer | 31458 |
| Komatsu | PC490LC-10 | Hydraulic Excavator | A40251 |
| Komatsu | D85PX-18 | Crawler Dozer | 23107 |

Table B: Description of repairs and services to be done on the equipment in Table A above and parts/components to be added thereto (show all serial numbers and engine numbers).

Insurance: If an amount is included in item 5c of this page, such amount is for physical damage, theft and fire insurance

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $80,245.54 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $0.00 | |
| | | | | | 4. Cash Price (1+2+3) | | $80,245.54 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $0.00 | |
| 24 | 12/12/2021 | 11/12/2023 | $3,413.31 | $81,919.44 | b. Net Trade In | $0.00 | |
| 24 | | | | $81,919.44 | c. Less Insurance | $0.00 | |
| | | | | | Total Down Payment (5a+5b-5c) | | $0.00 |
| | | | | | 6. Net Cash Price (4-5) | | $80,245.54 |
| | | | | | 7. a. Lien & Filing Fees | $0.00 | |
| | | | | | b. Other Fees | $0.00 | |
| | | | | | Total Other Charges | | $0.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $80,245.54 |
| | | | | | 9. Finance Charge (1.99%) | | $1,673.90 |
| | | | | | 10. Total of Payments (8 + 9) | | $81,919.44 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $81,919.44 |

Date finance charge begins to accrue (if different than contract date)

# KOMATSU   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
# FINANCIAL

ACCOUNT NO._____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**<br><br>Physical Damage Insurance Covering The Property Is Required.<br><br>BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.<br><u>Insurance Agency</u><br><br><br><br>Contact:<br>Phone# | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.<br>Physical Location:<br><br><br><br>BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.<br>THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.<br>IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a security interest under the Uniform Commercial Code in and to (i) the property sold hereunder and described on page one in Table B and (ii) the property described on page one in Table A, in each instance, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds thereof, including amounts payable under any insurance policies with respect thereto (collectively together with any Additional Collateral (as hereinafter defined), the "Collateral"). Buyer hereby authorizes Seller to file one or more financing statements covering any or all of the Collateral and/or a carbon or reproduction of this contract as a financing statement.

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON PAGES 3 THROUGH 5 hereof, which Buyer has read and to which Buyer agrees, contains the entire agreement relating to the conditional sale of the repairs, parts, components and services described in Table B (on page one) above and supercedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the repairs, parts, components and services described in Table B on page one. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: CWI ALABAMA, LLC | Effective Contract Date: 10/31/2021 |
|---|---|
| By: _Sh____   Title Manager | Salesman's Signature: |
| Co-Signer: | Signature For Seller Approval: |
| By:   Title: | |

# KOMATSU  PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
# FINANCIAL

ACCOUNT NO._____

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**
Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**
Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**
Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**
A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)  any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due;
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)  Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)  it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)  any of the property is lost or destroyed;
(f)  a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)  property of Buyer be attached or a receiver be appointed for Buyer;
(h)  whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

# KOMATSU    PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

## No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)      **Buyer's Initials** SW _____

# KOMATSU   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has located. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)    Buyer's Initials SW_____

**KOMATSU**    SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

TO:    KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:    Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"), dated 10/31/2021 having a present unpaid balance of $81,919.44 covering D61PX-23 S/N 31458 PC490LC-10 S/N A40251 D85PX-18 S/N 23107 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X]   **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ]   **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ]   **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ]   **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY

(Assignor)

Sign: _____

10/31/2021
(executed)

**Name: Greg Madaris**

**Title: Sales Administration Manager**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Wolters Kluwer Lien Solutions                    800-331-3282

B. SEND ACKNOWLEDGMENT TO:    (Name and Address)

Lien Solutions

P.O. Box 29071

Glendale, CA 91209-9071

USA

```
Alabama
Sec. Of State

B 21-7675087 FS
Date 11/11/2021
Time 04:58 PM
211111        1 Pg

File        $15.00
Access       $9.75
Conv         $4.50
Total       $29.25
8430668
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CWI ALABAMA, LLC | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|
| | | AL | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Komatsu Financial Limited Partnership | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

4. This FINANCING STATEMENT covers the following collateral:    ☐ ATTACHMENT

ONE (1) Komatsu D61PX-23 Crawler Dozer, S/N# 31458. ONE (1) Komatsu PC490LC-10 Hydraulic Excavator, S/N# A40251. ONE (1) Komatsu D85PX-18 Crawler Dozer, S/N# 23107.  COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

AL-0-83405091-62564434

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## KOMATSU   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

Subject to the terms and conditions herein contained, the Seller hereby agrees to sell to the Buyer the repairs, parts, components and services described below and the Buyer, having been quoted and offered both a cash sale price and a contract time price, hereby agrees to purchase from the Seller such repairs, parts, components and services on a contract time price basis set forth below. The property described in Table A below (the "Property" which is being repaired and/or serviced) is to be used only for commercial or business purposes, includes all accessories and attachments thereto, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY 5336 AIRPORT HWY BIRMINGHAM, AL 35201 | | Quote No. ▮ |
|---|---|---|---|

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location      3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

County:                   FULTON
County      FULTON            State Charter Number:
Telephone:  ▮              State of Registration:   AL
                                  Tax ID:            ▮

Table A: Equipment to be Repaired/Serviced

| Make | Model | Type | Serial No. |
|---|---|---|---|
| Komatsu | D61PXI-24 | Crawler Dozer | B60660 |

Table B: Description of repairs and services to be done on the equipment in Table A above and parts/components to be added thereto (show all serial numbers and engine numbers).

Insurance: If an amount is included in item 5c of this page, such amount is for physical damage, theft and fire insurance

### Schedule of Payments

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 24 | 03/12/2022 | 02/12/2024 | $2,390.90 | $57,381.60 |
| 24 | | | | $57,381.60 |

### Statement of Transaction

| | | |
|---|---|---|
| 1. Sales Price | | $66,793.97 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $0.00 | |
| 4. Cash Price (1+2+3) | | $66,793.97 |
| 5. a. Cash Down Payment | $10,000.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $10,000.00 |
| 6. Net Cash Price (4-5) | | $56,793.97 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $0.00 | |
| Total Other Charges | | $0.00 |
| 8. Amount Financed (6 + 7) | | $56,793.97 |
| 9. Finance Charge (0.99%) | | $587.63 |
| 10. Total of Payments (8 + 9) | | $57,381.60 |
| 11. Total Time Price (4 + 7 + 9) | | $67,381.60 |

Date finance charge begins to accrue (if different than contract date)

# KOMATSU PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
## FINANCIAL

ACCOUNT NO._____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**<br><br>Physical Damage Insurance Covering The Property Is Required.<br><br>BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.<br><br>Insurance Agency<br><br><br>Contact:<br>Phone# | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.<br><br>Physical Location:<br><br><br>BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.<br><br>THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.<br><br>IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a security interest under the Uniform Commercial Code in and to (i) the property sold hereunder and described on page one in Table B and (ii) the property described on page one in Table A, in each instance, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds thereof, including amounts payable under any insurance policies with respect thereto (collectively together with any Additional Collateral (as hereinafter defined), the "Collateral"). Buyer hereby authorizes Seller to file one or more financing statements covering any or all of the Collateral and/or a carbon or reproduction of this contract as a financing statement.

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON PAGES 3 THROUGH 5 hereof, which Buyer has read and to which Buyer agrees, contains the entire agreement relating to the conditional sale of the repairs, parts, components and services described in Table B (on page one) above and supercedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the repairs, parts, components and services described in Table B on page one. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| Buyer:       CWI ALABAMA, LLC | Effective Contract Date:           01/31/2022 |
| By: _____      Title **Manager**<br>Stephen Witmer (Feb 11, 2022 17:08 CST) | Salesman's Signature: |
| Co-Signer: | Signature For Seller Approval: |
| By:                                    Title: | |

# KOMATSU   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
# FINANCIAL

ACCOUNT NO._____

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then with such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)   any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b)   Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)   Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)   it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)   any of the property is lost or destroyed;
(f)   a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)   property of Buyer be attached or a receiver be appointed for Buyer;
(h)   whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)   any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

**KOMATSU PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**
**FINANCIAL**

ACCOUNT NO._____

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

## No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

**KOMATSU   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**
**FINANCIAL**

ACCOUNT NO._____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

**KOMATSU**    SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO:    KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:    Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"),
dated 01/31/2022 having a present unpaid balance of $57,381.60 covering D61PXI-24 S/N
B60660 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY

(Assignor)

Sign:

01/31/2022
(executed)

Name: Greg Madaris

Title: Sales Administration Manager

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Wolters Kluwer Lien Solutions     800-331-3282

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

JOHN JAMES

2929 ALLEN PKWY STE 3300

Houston, TX 77019
USA

Alabama
Sec. Of State
B 22-7105479 FS
Date 02/28/2022
Time 09:30 PM
220228      1 Pg
File       $15.00
Access      $9.75
Conv        $4.50
Total      $29.25
8498556

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CWI ALABAMA, LLC | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | | AL | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Komatsu Financial Limited Partnership | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

**4.** This FINANCING STATEMENT covers the following collateral:     ☐ ATTACHMENT

ONE (1) Komatsu D61PXI-24 Crawler Dozer, S/N# B60660. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

**5.** ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum     [if applicable]     **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]     [optional]     ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8.** OPTIONAL FILER REFERENCE DATA
AL-0-85137345-63264453

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# KOMATSU  PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT
# FINANCIAL

ACCOUNT NO. 

Subject to the terms and conditions herein contained, the Seller hereby agrees to sell to the Buyer the repairs, parts, components and services described below and the Buyer, having been quoted and offered both a cash sale price and a contract time price, hereby agrees to purchase from the Seller such repairs, parts, components and services on a contract time price basis set forth below. The property described in Table A below (the "Property" which is being repaired and/or serviced) is to be used only for commercial or business purposes, includes all accessories and attachments thereto, and shall, except as permitted by Paragraph 7 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | TRACTOR & EQUIPMENT COMPANY<br>5336 AIRPORT HWY<br>BIRMINGHAM, AL 35201 | | Quote No.  |
|---|---|---|---|

**Buyer's Information**
CWI ALABAMA, LLC
3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

Physical Location     3284 NORTHSIDE PARKWAY, SUITE 600
ATLANTA, GA 30327

County          FULTON
Telephone:

County:
State Charter Number:     FULTON
State of Registration:     AL
Tax ID:



Table A: Equipment to be Repaired/Serviced

| Make | Model | Type | Serial No. |
|---|---|---|---|
| Komatsu | D85PX-18 | Crawler Dozer | 23107 |
| Komatsu | WA270-8 | Wheel Loader | A29061 |
| Komatsu | D61PX-23 | Crawler Dozer | 31458 |
| Komatsu | HM400-5 | Articulated Truck | 10282 |

Table B: Description of repairs and services to be done on the equipment in Table A above and parts/components to be added thereto (show all serial numbers and engine numbers).

Insurance: If an amount is included in item 5c of this page, such amount is for physical damage, theft and fire insurance

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $97,815.35 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $0.00 | |
| | | | | | 4. Cash Price (1+2+3) | | $97,815.35 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $14,672.30 | |
| 24 | 04/30/2022 | 03/30/2024 | $3,536.56 | $84,877.44 | b. Net Trade In | $0.00 | |
| 24 | | | | $84,877.44 | c. Less Insurance | $0.00 | |
| | | | | | Total Down Payment (5a+5b-5c) | | $14,672.30 |
| | | | | | 6. Net Cash Price (4-5) | | $83,143.05 |
| | | | | | 7. a. Lien & Filing Fees | $0.00 | |
| | | | | | b. Other Fees | $0.00 | |
| | | | | | Total Other Charges | | $0.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $83,143.05 |
| | | | | | 9. Finance Charge (1.99%) | | $1,734.39 |
| | | | | | 10. Total of Payments (8 + 9) | | $84,877.44 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $99,549.74 |

Date finance charge begins to accrue (if different than contract date)

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)     Buyer's Initials 

# KOMATSU FINANCIAL PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact: | |
| Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a security interest under the Uniform Commercial Code in and to (i) the property sold hereunder and described on page one in Table B and (ii) the property described on page one in Table A, in each instance, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds thereof, including amounts payable under any insurance policies with respect thereto (collectively together with any Additional Collateral (as hereinafter defined), the "Collateral"). Buyer hereby authorizes Seller to file one or more financing statements covering any or all of the Collateral and/or a carbon or reproduction of this contract as a financing statement.

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON PAGES 3 THROUGH 5 hereof, which Buyer has read and to which Buyer agrees, contains the entire agreement relating to the conditional sale of the repairs, parts, components and services described in Table B (on page one) above and supercedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the repairs, parts, components and services described in Table B on page one. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1.** Do not sign this contract before you read it or if it contains blank spaces. **2.** You are entitled to an exact and completely filled-in copy of the contract you sign. **3.** Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. **4.** If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. **5.** Keep this contract to protect your legal rights.

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: CWI ALABAMA, LLC | Effective Contract Date: 03/18/2022 |
|---|---|
| By: _____ Title Manager | Salesman's Signature: |
| Co-Signer: | Signature For Seller Approval: |
| By: _____ Title: | |

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials _____

# KOMATSU FINANCIAL    PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

## Conditional Terms and Conditions:

### 1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

### 2. Waiver of Defenses Acknowledgment; Place of Payment:

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

### 3. Buyer's Warranties and Representations:

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

### 4. Events of Default; Acceleration:

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)  any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)  Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)  it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)  any of the property is lost or destroyed;
(f)  a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)  property of Buyer be attached or a receiver be appointed for Buyer;
(h)  whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

# KOMATSU FINANCIAL   PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

## No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), all other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

KF524S (03/13)
Page 4 of 5

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials _____

# KOMATSU FINANCIAL    PARTS & SERVICE SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO._____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

## 8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.

All risk of loss, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

## 9. Miscellaneous:

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.



# KOMATSU   SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

TO:     KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:     Security Agreement/Contract between CWI ALABAMA, LLC ("Buyer") and undersigned ("Assignor"), dated 03/18/2022 having a present unpaid balance of $84,877.44 covering D85PX-18 S/N 23107 WA270-8 S/N A29061 D61PX-23 S/N 31458 HM400-5 S/N 10282 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X]  **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ]  **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ]  **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ]  **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

TRACTOR & EQUIPMENT COMPANY
_____
(Assignor)

Sign: _____

03/18/2022
(executed)

**Name: Greg Madaris** _____

**Title: Sales Administration Manager** _____

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R

## UCC FINANCING STATEMENT
FOLLOW  INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Wolters Kluwer Lien Solutions                800-331-3282

**B. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

> JOHN JAMES
>
> 2929 ALLEN PKWY STE 3300
>
> Houston, TX 77019
>
> USA

```
Alabama
Sec. Of State

B 22-7156109 FS
Date 03/22/2022
Time 04:05 PM
220322   1 Pg

File     $15.00
Access    $9.75
Conv      $4.50
         ------
Total    $29.25
8502842
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CWI ALABAMA, LLC | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3284 NORTHSIDE PARKWAY | ATLANTA | GA | 30327 | USA |

| | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | AL | | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | | | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only <u>one</u> secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Komatsu Financial Limited Partnership | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8770 W Bryn Mawr Ave Suite 100 | Chicago | IL | 60631 | USA |

**4.** This FINANCING STATEMENT covers the following collateral:                                    ☐ ATTACHMENT

ONE (1) Komatsu D85PX-18 Crawler Dozer, S/N# 23107. ONE (1) Komatsu WA270-8 Wheel
Loader, S/N# A29061. ONE (1) Komatsu D61PX-23 Crawler Dozer, S/N# 31458. ONE (1) Komatsu
HM400-5 Articulated Truck, S/N# 10282.  COMPLETE WITH ALL PRESENT ATTACHMENTS,
ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

**8.** OPTIONAL FILER REFERENCE DATA
AL-0-85541858-63423350

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

DocuSign Envelope ID: 7824F463-0AAD-4ED7-B752-3C103580A326

# Cross Collateral Security Agreement

**KOMATSU
FINANCIAL**

This Agreement is by and between Komatsu Financial Limited Partnership ("KF") located at 8770 W Bryn Mawr Ave Suite 100, Chicago, IL 60631 and CWI ALABAMA, LLC (the "Company" ) located at 3284 NORTHSIDE PARKWAY, SUITE 600, ATLANTA, GA 30327

WHEREAS, KF has and/or may hereafter acquire and/or enter into Contracts (as defined herein) with the Company, and it is a condition precedent to KF, as appropriate, acquiring or entering into such Contracts that the Company shall agree to all terms and conditions included herein. Since the terms and conditions included in this Agreement will affect each of the Contracts, the Company desires the agreement of KF to the terms and conditions hereof.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HERETO AGREE AS FOLLOWS:

1. The following terms as used herein shall be defined as follows:
   a. "Contracts" shall mean all present and future (i) conditional sales contracts, lease agreements, security agreements, notes and other like agreements which KF may acquire arising from the sale or lease to the Company of equipment and/or inventory from any vendor or lessor, and (ii) lease agreements, security agreements, direct loan agreements, notes and other agreements of any kind between the Company and KF.
   b. "Collateral" shall mean all present and future equipment, inventory, and other property described in and subject to the Contracts and/or which secures the performance of the Company thereunder, together with all the cash and non-cash proceeds of all of the foregoing.
   c. "Obligations" shall mean all the present and future duties, liabilities and obligations due to KF from the Company under the Contracts, whether joint or several, direct or indirect, absolute or contingent, secured or unsecured, matured or unmatured, or by assignment or otherwise.

2. Each item of Collateral shall secure the payment and other performance by the Company of each of the Obligations and shall continue to do so unless and until all of the Obligations are paid in full and otherwise satisfied and the Contracts have been fully performed by the Company. In furtherance of the foregoing, the Company does hereby grant to KF a security interest in all Collateral as collateral security for any and all Obligations. KF shall retain its security interest in the Collateral as security for the Company's performance of the Obligations notwithstanding the payment in full or other complete performance by the Company of one or more Obligations or Contracts. The Company will obtain title to any item of Collateral subject to a lease agreement subject to the security interest identified in this Agreement notwithstanding the execution, delivery or terms of any Bill of Sale delivered by KF. The security interest granted hereby is a separate, independent security interest that is in addition to, and not in substitution of, any and all security interests heretofore or hereafter granted by the Company to KF, including, without limitation, those granted by the Contracts. The Company hereby represents and warrants that the security interest created hereby constitutes a first priority lien on the Collateral, except for any prior lien of KF. To the extent permitted by law, the Company hereby irrevocably authorizes KF to file a financing statement with respect to the Collateral signed only by KF, and to file a carbon, photocopy or other reproduction of this Agreement as a financing statement.

3. Without limitation of any provisions in any Contracts, the Company agrees that
   (i) it shall keep the Collateral free from any liens, encumbrances or security interests other than in favor of KF and shall defend at the Company's cost and expense any action, proceeding or claim affecting the Collateral,
   (ii) it shall keep and maintain such insurance upon the Collateral in such amounts and manner as KF may require, loss, if any, payable to KF or its assigns as their interests may appear,
   (iii) no financing statement covering any of the Collateral or any proceeds thereof is on file in favor of anyone other than KF, but if such other financing statement is on file, it will be terminated or subordinated,
   (iv) it has full authority to enter into this Agreement and in so doing it is not violating its charter or by-laws, any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this Agreement binding upon it,
   (v) it shall pay reasonable attorney's fees and other expenses incurred by KF in enforcing its rights against the Company under this Agreement or any Contract,

KF622R

DocuSign Envelope ID: 7824F463-0AAD-4ED7-B752-3C103D8CA22C

(vi) it shall pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against any of the Collateral or this Agreement, which obligation shall survive the termination of this Agreement,

(vii) if a certificate of title be required or permitted by law, the Company shall obtain such certificate with respect to the Collateral, showing the security interest of KF thereon and in any event do everything necessary or expedient to preserve or perfect the security interest of KF therein,

(viii) the Company will not misuse, fail to keep in good repair, secrete, or without the prior written consent of KF or except as expressly permitted under the relevant Contract, sell, rent, lend, encumber or transfer any of the Collateral, notwithstanding KF's claim to proceeds,

(ix) KF may enter upon the Company's premises or wherever any of the Collateral may be located at any reasonable time to inspect the Collateral and the Company's books and records pertaining to the Collateral, and the Company shall assist KF in making such inspection, and

(x) it shall, at its cost and expense, upon request of KF, duly execute and deliver, or cause to be duly executed and delivered, to KF such further documents and instruments and do and cause to be done such further acts as may be necessary or proper in the opinion of KF to carry out more effectively the provisions and purpose of this Agreement.

4.  A default by the Company under one or more of the Contracts or this Agreement shall constitute a default by the Company under each of the Contracts. Following such a default, KF may immediately exercise all the rights and remedies (i) of a secured party under the Uniform Commercial Code, (ii) otherwise accorded KF under any of the Contracts whether or not such rights or remedies are specifically set forth in the Contract being enforced, and (iii) otherwise lawfully available to KF.

5.  The parties hereto intend by this Agreement (i) to create cross default conditions among all the Contracts, and (ii) to create cross security rights and remedies in the favor of KF with respect to the Collateral and the Obligations. All the rights and remedies granted to KF hereunder shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect the rights and remedies of KF under the Contracts or under any statute, judicial decision or rule of law. This Agreement shall become a part of and specifically incorporated in the Contracts. Any provisions hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Except as expressly modified herein, all the terms and conditions included in the Contracts shall remain in full force and effect. This Agreement may be modified only through the written agreement of the parties hereto and shall inure to the benefit of KF and the successors and assigns of KF and shall be binding upon the Company and the successors and assigns of the Company. The Company may not assign its rights and/or obligations hereunder or under any of the Contracts without the prior written consent of KF.

Dated: 08/31/2020

Komatsu Financial Limited Partnership         CWI ALABAMA, LLC

By: _____        By: _____
                                          Manager

Title: _____      Title: _____

KF622R                                                            Page 2 of 2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 23-52262-SMS** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **JUDGE SAGE M. SIGLER** |
| | ) | |
| **KOMATSU FINANCIAL LIMITED** | ) | |
| **PARTNERSHIP,** | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | **CONTESTED MATTER** |
| | ) | |
| **CWI CHEROKEE LF LLC,** | ) | |
| | ) | |
| Respondent. | ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 20, 2023, I electronically filed the foregoing ***Notice of Hearing*** and ***Motion of Komatsu Financial Limited Partnership for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362*** with the Clerk of Court and served the same on the below individuals either (1) by first-class United States mail, with adequate postage prepaid, or (2) as to Registered Users of the Court's ECF program, by notice of electronic filing pursuant to BLR 5005-8(b):

CWI Cherokee LF LLC
3284 Northside Parkway, Suite 600
Atlanta, GA 30327

Jonathan A Akins
John A. Christy
Schreeder, Wheeler & Flint, LLP
Suite 800
1100 Peachtree Street NE
Atlanta, GA 30309

Alan Hinderleider
Office of the United States Trustee
362 Richard B Russell Federal Building

Attached mailing matrix for the 20 largest
unsecured creditors

75 Ted Turner Drive, S.W.
Atlanta, GA 30303


Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/ Kathleen G. Furr
Kathleen G. Furr
Georgia Bar No. 589008
Baker Donelson
Monarch Plaza,
3414 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326
T: 404.221.6533
F: 404.238.9787
kfurr@bakerdonelson.com

*Counsel for Movant Komatsu Financial
Limited Partnership*

## ATTACHMENT

Brook T Smith Investment
2307 River Rd., Suite 200
Louisville, KY 40206

AJ Equity
1648 61st Street
Brooklyn NY 11204

Atomic Transport
PO Box 2548
Chattanooga TN 80903

Brickstone Fund
5314 16th Ave
Suite 139
Brooklyn NY 11204

Bill Cohen
3630 Peachtree Road, Suite 940 |
Atlanta, Georgia 30326

Wes Shafto
1818 Avenue of Americas
Monroe, LA

10 Kings LLC
80 W. Wieuca Road N.E., Suite 170
Atlanta, GA 30342

Marshall Roberts
80 W. Wieuca Road N.E., Suite 170
Atlanta, GA 30342

Derek Griffin
80 W. Wieuca Road N.E., Suite 170
Atlanta, GA 30342

The McPherson Companies, Inc.
5051 Cardinal Street
Trussville, AL 35173

Evergreen Environmental
300 Noble Hill Rd
Attalla AL 35954-0010

JLW Contracting LLC
2310 Bennett Rd
Jasper AL 35503

Denali
P.O. Box 740903
Atlanta, GA 30374-0903

American Services, LLC
2281 Stateline Rd W
Southaven, MS 38671

Mid South Septic
11284 Gulf Stream Rd
Arlington, TN 38002

Tractor and Equipment
PO Box 12326
Birmingham, AL 35202

Thompson Tractor
PO Box 934005
Atlanta, Georgia 31193

CDG Engineering
PO Box 278
Andalusa AL 36420

Republic Services
PO Box 677839
Dallas, TX 75267

Valicor Environmental Services Dept 77380
PO Box 77000
Detroit, MI 48287