**IT IS ORDERED as set forth below:**

**Date: May 31, 2023**

_Sage M. Sigler_

_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| CWI CHEROKEE LF LLC | ) | CASE NUMBER 23-52262-SMS |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER ON DEBTOR'S MOTION TO SELL ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, AND ENCUMBRANCES, DIRECTING
BIDDING PROCEDURES, AND SETTING PRELIMINARY AND FINAL
HEARINGS**

On May 9, 2022, Debtor filed its "Amended Motion to Sell Assets Free and

Clear of Liens, Claims, and Encumbrances and for (A) an Order and Notice (i)

Directing Bidding Procedures Subject to Objection, (ii) Setting Preliminary Hearing

in Event of Objection to Bidding Procedures, and (iii) Setting Final Sale Hearing;

and (B) an Order at Final Sale Hearing Approving Sale Free and Clear" (the "Motion") [**Doc. No. 94**]. Pursuant to an *Order and Notice on Debtor's Motion to Sell Assets Free and Clear of Liens, Claims, and Encumbrances, Directing Bidding Procedures, and Setting Preliminary and Final Hearings* [Doc. 95], any objections to the Motion were required to be filed on or before May 29, 2023, or the bidding procedures proposed in the Motion would stand approved.  Komatsu Financial Limited Partnership ("Komatsu") and the Solid Waste Disposal Authority of Muscle Shoals, Sheffield, and Tuscumbia, Alabama ("SWDA") each filed limited objections [Docs. 105 and 106.]  A hearing was held on May 31, 2023.  Based upon the Motion, the presentations of counsel at the hearing, and the entire record of this case, good cause exists to grant the Motion as modified herein.

The property being sold is all of Debtor's rights and interests in and to a property known as the Cherokee Industrial Landfill in Cherokee, Alabama (the "Landfill") and a transfer station in Muscle Shoals, Alabama (the "Muscle Shoals Transfer Station"; collectively with the Landfill, the "Real Property") pursuant to that Lease Agreement between Solid Waste Disposal Authority of the Cities of Muscle Shoals, Sheffield, and Tuscumbia, Alabama and CWI Cherokee LF LLC, dated June 23, 2020; all of Debtor's rights and interests pursuant to that certain Ground Sublease and Lease of Improvements dated June 23, 2020 between CWI Transfer HSV, LLC and CWI Cherokee LF LLC (the "Huntsville Transfer Station");

all tangible personal property of Debtor, and rights, records, and permits with respect

to Debtor's operation of the Real Property and the Huntsville Transfer Station,

including the Disposal Agreement with the SWDA dated June 23, 2020

(collectively, and as more specifically defined in the Motion, the "Subject Assets").

The proposed sale is subject to approval by this Court. Debtor has proposed

bidding procedures to ensure the highest and best price for the sale of the Subject

Assets, as follows:

a.   Debtor and B. Riley shall continue to market and solicit offers to

purchase the Subject Assets on reasonable and customary terms, subject

to the Bidding Procedures. Debtor and B. Riley, in consultation with

the UMB Bank, N.A. (the "Bond Trustee") shall provide to prospective

purchasers such information as they reasonably believe necessary to

adequately market and sell the Subject Assets, and may require that

interested parties execute a non-disclosure agreement prior to accessing

non-public information of the Debtor.

b.   Debtor has requested Initial Indications of Interest (the "IOI") from

prospective purchasers to be delivered on or before May 25, 2023,

copies of which the Debtor shall provide to the Bond Trustee as soon

as reasonably practical after such IOIs have been received by the

Debtor; provided, however, that the Bond Trustee shall not disclose the

3

contents of any such IOIs to any other creditor, prospective bidder, party, or non-party except that the Bond Trustee may disclose the IOIs to the bondholders provided such bondholders shall not disclose the IOIs to any other creditor, prospective bidder, party, or non-party and agree in advance to be bound by this order.

c. Debtor will receive stalking horse bids (each, a "Stalking Horse Bid" and such bidder a "Stalking Horse Bidder") through June 29, 2023. Any person who is or may be interested in submitting a Stalking Horse Bid, as defined in the Motion, should contact Debtor's Investment Banker, at:

Perry Mandarino
B. Riley Securities, Inc.
pmandarino@brileyfin.com
(646) 367-2402

Debtor shall provide copies of such received Stalking Horse Bids as soon as reasonably practical to the Bond Trustee; provided, however, that the Bond Trustee shall not disclose the contents of any such bids to any other creditor, prospective bidder, party, or non-party, except that the Bond Trustee may disclose the Stalking Horse bids to the bondholders provided such bondholders shall not disclose the Stalking

Horse Bids to any other creditor, prospective bidder, party, or non-party and agree in advance to be bound by this order;

d.     On or before July 11, 2023, Debtor, subject to the consent of the Bond Trustee, will select a bid to serve as the Designated Stalking Horse Bid. The Designated Stalking Horse Bidder shall be entitled to a Break-Up Fee in an amount that is 2.5% of the total purchase price provided in the Stalking Horse Bid. Debtor will file notice of the Designated Stalking Horse Bid with the Court.

e.     Between July 11, 2023, and July 28, 2023 (the "Bid Deadline"), Debtor will receive bids from potential purchasers. To be considered a qualified bid (a "Qualified Bid"), the bid must include:

    i.     The same or better terms than those set forth in the Designated Stalking Horse Bid and provide a markup of the asset purchase agreement utilized by the Stalking Horse Bidder;

    ii.    An acceptable form marked against the Designated Stalking Horse Bid purchase agreement, not subject to any contingencies, including but not limited to any inspection, title, financing, zoning, or other conditions precedent to the bidder's obligations to purchase the Subject Assets;

5

       iii.    A purchase price of not less than the Designated Stalking Horse

Bid, plus the Break-Up Fee, plus an overbid of $100,000.00;

       iv.    An earnest money deposit in an amount not less than ten (10)

percent of the purchase price ("Earnest Money");

       v.    A closing date of August 14, 2023;

       vi.    Any information reasonably requested by Debtor, in consultation

with the Bond Trustee, to ensure to Debtor's reasonable

satisfaction that such bidder is financially capable of

consummating the transaction;

f.    Any Qualified Bid must be delivered, such that it is actually received

on or before the Bid Deadline, to the following parties, provided

however that the Bond Trustee may share the Qualified Bids with the

bondholders provided that such bondholders have agreed to maintain

confidentiality:

John A. Christy, Esq.
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-4516
Telephone: (404) 681-3450
jchristy@swfllp.com

with a copy to

Perry Mandarino

B. Riley Securities, Inc.
pmandarino@brileyfin.com

and

Randall Brater
ArentFox Schiff LLP
1717 K Street NW
Washington, D.C. 20006
randall.brater@afslaw.com

g.   A Qualified Bid is firm and binding upon each Potential Bidder at the time that such bid is submitted to Debtor's counsel.

h.   Credit Bid: The Bond Trustee has an absolute right to credit bid an amount up to the total amount of its claim, as set forth in the Motion and paragraph E(b) of the *Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection and Related Relief to Prepetition Secured Party* [Doc. 87] (the "Cash Collateral Order"), and unless a Designated Stalking Horse bid, in an amount not less than as described in paragraph (e)(iii) above (a "Credit Bid"). A Credit Bid shall constitute a Qualified Bid, without the need to place a deposit. Upon exercise of a Credit Bid, the Bond Trustee shall have the right to designate any person or entity to take title to the Subject Assets that are subject to the credit bid, and provided that such designee takes title, the Bond Trustee shall not have any obligation in connection with or be

7

deemed to have taken title to or ownership of, or have any obligation in connection with the Subject Assets. The Bond Trustee will not be a Backup Bidder unless the Bond Trustee consents in writing. The Bond Trustee's Credit Bid may also serve as the Stalking Horse Bid, provided that it is determined to be the highest and best bid to be selected as the Stalking Horse Bid. For avoidance of doubt, if the Bond Trustee serves as the Stalking Horse Bidder, the Bond Trustee is entitled to the Break-Up Fee contemplated above.

i.     If Debtor receives two or more Qualified Bids, Debtor will conduct an auction with respect to the sale of the Subject Assets on August 7, 2023, at 10:00 a.m. local Atlanta time, at the offices of Schreeder, Wheeler & Flint, LLP, 1100 Peachtree Street NE, Suite 800, Atlanta, Georgia 30309, or such other time and location as may be designated by the Debtor upon reasonable notice to Qualified Bidders (the "Auction"). Only persons who submitted a Qualified Bid (each a "Qualified Bidder") shall be allowed to participate in the Auction. Bidding shall begin initially with the highest and best Qualified Bid received, and subsequently continue in minimum increments of $100,000. The Debtor will conduct the Auction in the manner it determines , in consultation with the Bond Trustee, will result in the highest, best, or

8

otherwise financially most superior offer for the Subject Assets; provided that, if the Bond Trustee informs Debtor of its intent to Credit Bid, Debtor will have no further obligation to consult with the Bond Trustee on the manner of conducting the Auction. The Auction shall be conducted openly and shall be transcribed. The required minimum amount of incremental bids may be adjusted by Debtor, in consultation with the Bond Trustee, during the Auction, subject only to a requirement of good faith. The bidding will not conclude until each participating bidder has had the opportunity to submit any additional Qualified Bid(s) with full knowledge of the existing highest bid. If Debtor's counsel receives only one Qualified Bid on or before the Bid Deadline, Debtor's counsel will report this fact to the Bankruptcy Court at the Final Sale Hearing and proceed, subject to the consent of the Bond Trustee, with the sale of the Subject Assets to such bidder.

j.     The Debtor, subject to the consent of the Bond Trustee which consent shall not be unreasonably withheld, reserves the right to determine, in its reasonable discretion, the value of any Qualified Bid and to determine which Qualified Bid constitutes the highest, best, or otherwise financially most superior offer for the Subject Assets;

provided, however, that such determination shall be subject to review and approval of the Bankruptcy Court.

k.  At the conclusion of the bidding, Debtor will announce its determination, subject to the consent of the Bond Trustee which consent shall not be unreasonably withheld, as to the bidder (the "Successful Bidder") submitting the highest and best bid for the Subject Assets (the "Successful Bid"). The sale order designating the Successful Bid, shall be in a form acceptable to the Bond Trustee and submitted to the Bankruptcy Court for its consideration for approval at the Sale Hearing.

l.  Debtor may identify, in its discretion and subject to the consent of the Bond Trustee which consent shall not be unreasonably withheld, the bid or bids which constitute the next highest or best offer for the Subject Assets (the "Backup Bid", and such person submitting such Backup Bid, the "Backup Bidder").

m.  By submitting a bid, each Qualified Bidder shall be deemed to acknowledge that it has had an opportunity to inspect the Subject Assets and any pertinent documents prior to bidding and that such Qualified Bidder relied solely on that review and upon its own investigation and inspection regarding the Subject Assets in making its offers.

n.  The Earnest Money(s) shall be distributed, as follows:

(1)     Upon Closing of the transaction for which the Earnest Money was made, to Debtor, with all other Earnest Money deposits returned to the respective unsuccessful bidders;

(2)     Upon any breach by a Qualified Bidder prior to Closing, to Debtor;

(3)     Upon or within ten (10) days after entry of a final order by the Bankruptcy Court disapproving the transaction for which the Earnest Money was made: refunded to the Successful Bidder;

(4)     Upon or within ten (10) days after written notification to the Successful Bidder by Debtor of Debtor's inability to close the transaction, then refunded to the Successful Bidder; or

(5)     If, due to the Successful Bidder's failure to consummate the sale of the Subject Assets, Closing does not occur within (i) the time period set forth in the Agreement with respect to the Successful Bid, (ii) an additional time period acceptable to Debtor in writing, or (iii) an additional time period authorized by the Bankruptcy Court: to Debtor;

(6)     Earnest Money released to the Debtor in accordance with this Paragraph shall become property of the Bankruptcy Estate, subject to the rights of creditors and parties in interest, including

the Bond Trustee's liens and claims granted under the Cash Collateral Order.

Debtor's counsel shall hold any Earnest Money received in accordance with these Bidding Procedures in an escrow account. Each Qualified Bidder acknowledges that Debtor's counsel shall act in accordance with these Bidding Procedures without further instructions. Debtor and Debtor's counsel shall have no duties or obligations with respect to the Bidding Procedures except those expressly set forth herein and in the applicable Agreement.

Debtor' counsel shall not be required to invest the Earnest Money in an interest earning account or to segregate each deposit, but may, in its sole discretion, do so. In the event of a dispute between a Successful Bidder and Debtor or Debtor's counsel, Debtor's counsel shall have the right to retain the Earnest Money in escrow, and Debtor, Debtor's counsel, or the party making the Earnest Money may apply to the Bankruptcy Court for a determination of the rights and obligations of Debtor, Debtor's counsel, and the party making the Earnest Money. The fact that Debtor's counsel serves as holder of the Earnest Money shall not disqualify it from representing the Debtor in any dispute over the disposition of the Earnest Money.

12

o.    Debtor will not be deemed to have accepted any bid, including the

Successful Bid, until the Bankruptcy Court has entered an Order

approving the Successful Bid and Debtor's consummation of the sale

in a form acceptable to the Bond Trustee. In the event Closing does not

take place as provided below, Debtor reserves the right to accept,

subject to the consent of the Bond Trustee which consent shall not be

unreasonably withheld, the next highest and best Qualified Bid.

p.    If the Successful Bidder fails to close in accordance with the terms of

the Successful Bid and the Order approving the sale, the Earnest Money

of such Successful Bidder will be retained by Debtor as liquidated

damages, and not a penalty, it being agreed by participation in the bid

process that actual damages are impossible to determine, and such

Earnest Money shall become property of the Bankruptcy Estate, subject

to the rights of creditors and parties in interest, including the claims and

liens of the Bond Trustee under the Cash Collateral Order. In such

event, the Subject Assets will be sold to the Qualified Bidder submitting

the next highest bid which is able to close in accordance with the terms

of the Agreement, as the case may be.

q.    If Debtor does not consummate a sale of the Subject Assets for any

reason (other than the Successful Bidder's failure to consummate a sale

13

in accordance with the Agreement, as the case may be, and the Order approving the sale), Debtor's sole obligation shall be to refund the Earnest Money (if one was made by the Successful Bidder) to the Successful Bidder.

r.    Closing of the sale of the Subject Assets (the "Closing") shall take place in accordance with the closing date set forth in the Successful Bid, but in any event not later than August 14, 2023, unless extended by the Debtor, subject to the consent of the Bond Trustee. With respect to Closing, time is of the essence.

s.    The balance of the purchase price shall be paid by the Successful Bidder to Debtor, by wire transferred, certified funds or other good funds at Closing in a form acceptable to Debtor.

t.    All adjustments to be made in connection with Closing, if any, shall be made as provided in the Successful Bid.

u.    In the event of any conflict in the terms and conditions set forth herein and in any agreement for purchase of the Subject Assets approved by the Bankruptcy Court ("Approved Purchase Agreement"), the court's Order shall govern.

v.    The Final Sale Order may provide that all liens, claims, encumbrances, and interests in, to, or under the Subject Assets are removed from the

14

Subject Assets and transferred and attached to the proceeds of the sale of the Subject Assets in the same priority and to the same extent and validity as such liens, claims, encumbrances, and interests attached to the Subject Assets.

w.    Debtor may, in its discretion and subject to the consent of the Bond Trustee, waive compliance with any deadline or extend any deadline in these bid procedures; provided, however, that reasonable notice of any rescheduled auction shall be provided to all Qualified Bidders in accordance with subpart (d) above.

Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that the Bidding Procedures are APPROVED as modified herein.

**IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN** that a Final Hearing related to the proposed sale of the Subject Assets, as described in the Bidding Procedures, shall be held in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, on the **14th day of August, 2023, at 11:00 A.M. (the "Final Sale Hearing")**. Participants may appear remotely via the Court's Virtual Hearing Room, available from the Court's webpage: https://www.ganb.uscourts.gov/content/honorable-sage-m-sigler. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the

"Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage

for this Court, www.ganb.uscourts.gov for more information.

**IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN** that any

party to an executory contract or lease with the Debtor shall provide notice to Debtor,

**on or before July 11, 2023**, detailing any objections to the proposed assumption and

assignment of the relevant executory contract or lease including the dollar amount

of any monetary default or compensation which said party contends is owed and a

detailed explanation of any nonmonetary defaults said party contends must be cured

in connection with the assumption of such executory contract. At the Final Sale

Hearing, to the extent a dispute exists regarding any cure amounts as to Assigned

Contracts, the Court may set a Cure Holdback Amount sufficient to provide adequate

assurance within the meaning of 11 U.S.C. § 365(b)(1)(A) and (B).

**IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN** that all

parties' rights and objections to a sale proposed by the Debtor for approval pursuant

to this Order are reserved.  Any party with any objections to the proposed sale of the

Subject Assets on the terms set forth herein shall file a written objection with the

Court, **on or before August 9, 2023 at 5:00 p.m. EDT**.

**IT IS FURTHER ORDERED,** whereas Komatsu Financial Limited

Partnership ("Komatsu") asserts a lien over certain Financed Equipment (the

"Financed Equipment") defined as follows: (i) One (1) Komatsu PC490LC-10

16

Hydraulic Excavator (Serial No. A40251); (ii) One (1) Komatsu D61PX-23 Crawler Dozer (Serial No. 31458); (iii) One (1) Komatsu D85PX-18 Crawler Dozer (Serial No. 23107); (iv) One (1) Komatsu HM400-5 Articulated Truck (Serial No. 10282); (v) One (1) Komatsu WA270-8 Wheel Loader (Serial No. A29061); and (vi) One (1) Komatsu D61PXI-24 Crawler Dozer (Serial No. B60660). The Financed Equipment is owned by CWI Alabama, LLC, and the Financed Equipment currently is in the possession of the Debtor.   As of March 7, 2023, $626,634.60 was due and owing to Komatsu, exclusive of interest, attorneys' fees and costs after March 7, 2023.  Komatsu shall have the right to credit bid for the Financed Equipment up to the full amount due and owing to Komatsu, and, in the event Komatsu is the successful bidder by way of credit bid, Komatsu shall not be responsible for any costs, surcharge or premium related to the inclusion of its equipment in the auction.  All of Komatsu rights in connection with the sale of the Debtor's assets are reserved, including the right to object to the sale of the Financed Equipment.

**IT IS FURTHER ORDERED** that Debtor's counsel shall serve a copy of this Order and Notice upon all creditors and parties in interest within three business days of its entry, and shall file a certificate of such service within three days thereafter.

**[END OF DOCUMENT]**

Prepared and Presented by:

/s/ Jonathan A. Akins
JOHN A. CHRISTY
Georgia Bar No. 125518
jchristy@swfllp.com
JONATHAN A. AKINS
Georgia Bar No. 472453
jakins@swfllp.com

Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-4516
Telephone: (404) 681-3450

DISTRIBUTION LIST:

John A. Christy
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-4516
Telephone: (404) 681-3450