IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| CWI CHEROKEE LF LLC, ) | Case No. 23-52262-SMS |
| ) | |
| Debtor. ) | Chapter 11 |

## DECLARATION OF KERRY UNDERWOOD IN SUPPORT OF SALE

I, Kerry Underwood, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I submit this declaration in support of the *Debtor's Amended Motion to Sell Assets Free and Clear of Liens, Claims, and Encumbrances and for (A) An Order and Notice (I) Directing Bidding Procedures Subject to Objection, (II) Setting Preliminary Hearing in Event of Objection to Bidding Procedures, and (III) Setting Final Sale Hearing; and (B) an Order at Final Sale Hearing Approving Sale Free and Clear* [Docket No. 94] (the "Sale Motion").

2. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge. If I were called to testify, I would testify competently to the facts set forth in this declaration.

3. I am the Chairman of the Solid Waste Disposal Authority of the Cities of Muscle Shoals, Sheffield, and Tuscumbia, Alabama, an Alabama public corporation (the "Authority").

4. As Chairman of the Authority, I have been granted executive power for all purposes of the transaction contemplated by the Asset Purchase Agreement among the Authority and CWI Cherokee LF, LLC ("Debtor").[1]

---

[1] The form of the Asset Purchase Agreement was filed in the Debtor's bankruptcy case at Docket No. [INSERT].

1

5.  The Authority is a public corporation organized by the cities of Muscle Shoals, Sheffield, and Tuscumbia, Alabama, pursuant to Sections 11-89A-1, *et seq.* of the Code of Alabama for the purpose of owning substantially all of the property that is leased to the Debtor for its operations.

6.  The Debtor's acquisition of its property was financed by certain bonds issued by the Authority and payable from the Debtor's lease obligations to the Authority.

7.  As the Court is aware, the Authority has alleged that the Debtor is in material default of its obligations to the Authority under the relevant lease and related documents. Without limitation, the Alabama Department of Environmental Management ("ADEM") has issued certain orders prohibiting the operation of the Authority's landfill, which is the Debtor's primary asset.

8.  The Asset Purchase Agreement provides a means of settling all disputes among the Debtor and the Authority and refinancing the Authority's bond obligations.

9.  I participated in the negotiations of the Asset Purchase Agreement. Unless otherwise defined, all capitalized terms in this declaration shall have the meanings provided in the Asset Purchase Agreement.

10. Upon Court approval, the Authority intends to consummate the Asset Purchase Agreement, and all transactions contemplated thereby, on or before the agreed outside Closing Date of October 31, 2023.

11. As set forth in the Asset Purchase Agreement, the closing is conditioned upon, among other things, the 2023 Bond Refunding to satisfy the 2020 Bond Obligations. Towards these ends, the Authority has submitted financing documents to the ratings agencies and bond insurers. The Authority had a rating call on September 8, 2023, expects to receive its rating on

September 15, 2023, and anticipates having a municipal bond insurance commitment soon thereafter.

12. Furthermore, the Authority and its professionals are working with Cities of Muscle Shoals, Sheffield, and Tuscumbia, Alabama to arrange for the cities' approval of the 2023 Bond Refunding.

13. The Assumed Contracts are an integral part of the Acquired Assets, and, as such, the assumption and assignment of the Assumed Contracts are reasonable and necessary to sell the Acquired Assets to the Authority, and will enhance the value of the Debtor's estate.

14. Upon the Closing, I believe the Authority will have more than sufficient operating cash, other working capital, employees, and relevant industry experience to continue the productive use of the Transferred Assets (including all Assumed Contracts) and to otherwise satisfy any Assumed Liabilities in the ordinary course of business.

15. Based upon my review of the due diligence, I believe that the Authority is willing, authorized, capable and, upon the issuance of the 2023 Bond Refunding, qualified financially, operationally, legally and otherwise, of unconditionally performing all obligations under the Asset Purchase Agreement, including (i) satisfying the Assumed Liabilities specified in the Asset Purchase Agreement as and when they become due, (ii) performing obligations under the contracts to be assumed and assigned to the Authority under the Asset Purchase Agreement in accordance with Bankruptcy Code section 365, and (iii) satisfying the conditions precedent to the Closing of the sale contemplated in the Asset Purchase Agreement.

16. At all times during the Authority's communications and negotiations with the Debtor and its professionals, the Authority has acted in good faith and at arm's-length. The Authority understood that the Debtor was free to deal with any other parties interested in acquiring

the Transferred Assets, or any other assets the Debtor marketed pursuant to the Court approved sale and bidding procedures.

17. To the best of my knowledge, neither the Authority, nor any of its professionals, officers, employees, representatives, or affiliates have engaged, or caused any other party to engage, in any collusion, or other misconduct, with respect to the Asset Purchase Agreement or the submission of any other potential bid for any of the Debtor's assets.

18. To the best of my knowledge, neither the Authority, nor any of its professionals, officers, employees, representatives, or affiliates have engaged, or caused any other party to engage, in any interference or other behavior that would prevent the consummation of a transaction between the Debtor and any other potential bidders for the Debtor's assets.

19. To the best of my knowledge, neither the Authority, nor any of its professionals, officers, employees, representatives, or affiliates have engaged, or caused any other party to engage, in any collusion or other similar behavior with any other potential bidder for the Debtor's assets to limit or otherwise affect the consideration under the Asset Purchase Agreement.

20. The Authority, on the one hand, and the Debtor, on the other, have been represented by separate legal counsel at all times.

21. Other than the Asset Purchase Agreement, and exhibits and schedules thereto, any related agreements, there are no other agreements between the Authority, on the one hand, and the Debtor, on the other, with respect to the proposed sale under the Asset Purchase Agreement.

22. The Authority is not an "insider" or "affiliate" of the Debtor, and no common identity of officers, directors, or controlling ownership exists between the Authority, on the one hand, and the Debtor, on the other.

23. To the best of my knowledge, the only connections among the Authority, on the one hand, and the Debtor, on the other, are that: (i) the Authority and the Debtor are parties to a certain Lease Agreement dated June 23, 2020 that is an Assumed Contract under the Asset Purchase Agreement; and (ii) the Authority is a creditor in the Debtor's bankruptcy case.

24. The Authority would not have entered into the Asset Purchase Agreement and would not consummate the sale contemplated thereby if such sale was not free and clear of all liens, debts, liabilities, claims, charges, security interests or Encumbrances of any kind whatsoever (other than the Assumed Liabilities) pursuant to Bankruptcy Code section 363(f), or if the Authority would, or in the future could, be liable for any of such liens, debts, liabilities, claims, charges, security interests or Encumbrances (other than Assumed Liabilities).

25. Similarly, as provided in the Asset Purchase Agreement, the Debtor's and its insiders' and affiliates' releases of the Authority and other parties are material and integral to the transactions contemplated in the Asset Purchase Agreement. The Authority and the Debtor have been parties to prior litigation and the Authority would not agree to close the transactions contemplated by the Asset Purchase Agreement if it did not simultaneously resolve all potential claims against the Authority and the other parties receiving releases.

26. Accordingly, as more particularly set forth in the Asset Purchase Agreement, the Authority agreed to provide certain consideration that is payable for the benefit of certain of the Debtor's insiders and affiliates in exchange for the relevant releases.

27. Another material provision of the Asset Purchase Agreement is that the Authority will take operational control of the Transferred Assets upon entry of the order approving the Asset Purchase Agreement. The Authority insisted upon this provision to ensure that the Authority could

take all steps necessary to bring the landfill into compliance with ADEM orders and reopen the landfill as soon as possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[SIGNATURE ON FOLLOWING PAGE]*

Executed on September 7, 2023.

_____
Kerry Underwood